Wesley **FREEMAN** et al.

v.

George P. **SHULTZ** et al.

No. 24861.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 5, 1972.

Decided Sept. 6, 1972.

Mr. William M. Kunstler, New York City, with whom Messrs. Morton Stavis, Newark, N. J., and Philip J. Hirschkop, Alexandria, Va., were on the brief for appellants.

Mr. Irwin Goldbloom, Atty., Dept. of Justice, with whom Mr. L. Patrick Gray, III, Asst. Atty. Gen. at the time the brief was filed and Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and Alan S. Rosenthal, Atty., Dept. of Justice, was on the brief for federal appellees.

Mr. William L. Dennis, New York City, with whom Mr. Donald J. Mulvihill, Washington, D. C., was on the brief, for appellee, Grumman Aerospace Corp.

Before Justice CLARK,* of the Supreme Court of the United States, BAZELON, Chief Judge, and WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

Plaintiffs appeal from an order dismissing a class action brought by nineteen black employees, former employees or applicants for employment of Grumman Aerospace Corporation, as alleged victims of racial discrimination. They have sought relief on their own behalf, on behalf of all black employees, all black applicants for employment, and on behalf of all former black employees of Grumman. Plaintiffs seek injunctive relief against the allocation by certain government officials of federal contracts which finance the allegedly discriminatory employment practices of Grumman, and also relief in the form of a declaration that such allocation and use violates Executive Order 11246, Title VII of the Civil Rights Act of 1964, and the Due Process Clause of the Constitution. The District Court dismissed this action on two grounds, sovereign immunity and the failure of the plaintiffs to exhaust their administrative remedies.[1] Without reaching the District Court's first conclusion, we affirm on the latter ground.

## I. *Factual Background*

During late 1968 and early 1969 certain minority group employees complained to the New York Regional Office of the Contract Compliance Office, Defense Supply Agency, of alleged discriminatory practices by Grumman. In addition, on 28 March 1969 four Grumman employees came to Washington, D. C., and spoke with a compliance officer in the Office of Federal Compliance, Department of Labor. Although no formal complaint was filed, the information concerning the visit by the Grumman employees was forwarded to the Chief of the Office of Contract Compliance, Defense Supply Agency. Subsequently, the Defense Supply Agency conducted a review of Grumman's compliance with its equal opportunity obligations under Executive Order 11246. This review was a general review of the company's employment practices. In neither instance, in New York or Washington, did these employees file a formal complaint against Grumman, although they were informed of their right to do so.

Since no formal complaint of the plaintiff's grievances had been filed, the investigation was not confined or specifically directed to the discriminatory practices alleged by the plaintiffs in their visits to the two Offices of Compliance. Following this general investigation the Office of Compliance determined that Grumman was not in compliance with the requirements of Executive Order 11246. Negotiations between Grumman and the Office of Compliance were commenced and eventually an agreement was reached to revise certain of Grumman's employment policies. After its agreement to correct the deficiencies in its employment policies and to file an acceptable affirmative action plan, Grumman was found to be in compliance with the requirements of Executive Order 11246.

Since that time the plaintiffs have never complained formally or informally to the Departments of Defense or Labor of discriminatory practices by Grumman. Until the plaintiffs instituted the instant suit, Grumman had never been given an opportunity to hear or formally answer the charges of discrimination made by the plaintiffs. Rather than making and seeking answers to these specific charges before an administrative body, the plaintiffs have simply chosen to make their formal complaint in the first instance before a federal court.

---

* Mr. Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation pursuant to Title 28, U.S.C. Section 294(a).

1. Freeman v. Shultz, 317 F.Supp. 376 (D. D.C.1970).

II. *Rationale for Requiring Formal Complaint and Exhaustion of Administrative Remedies*

■ Disposition of the dispute is controlled by this court's decision in Hadnott v. Laird.[2] In *Hadnott*, plaintiffs instituted an action on behalf of themselves, all black employees, applicants for employment and prospective applicants for employment, against eleven paper products companies, alleging discriminatory employment practices by the companies. In *Hadnott*, as in the instant case, the plaintiffs sought an injunction against certain government officials to prevent them from awarding government contracts to the companies until alleged discriminatory practices had been eliminated. Likewise, in both cases, no formal complaint was pursued by the plaintiffs. The plaintiffs chose to bring an action in federal court rather than seek to have their rights vindicated through the administrative procedures outlined in Executive Order 11246 or Title VII of the Civil Rights Act of 1964. In *Hadnott* this court denied plaintiffs relief because they had failed to exhaust their administrative remedies by filing a formal complaint with the appropriate office of compliance and awaiting the completion of the administrative investigation which would have followed.

Despite the striking similarity between *Hadnott* and the instant case, plaintiffs contend that their situation is distinguishable on its facts. Plaintiffs argue that in this action the administrative remedies have been adequately pursued because here, unlike *Hadnott*, the plaintiffs' original oral complaint to the Office of Compliance resulted in an investigation of the accused company.

Since this investigation did not, in the plaintiffs' view, remedy the discrimination which they informally alleged, they contend they should not be required to seek further administrative relief before they resort to the federal courts. Recognizing that this was the only point not directly decided by *Hadnott*, this court ordered that argument be limited to whether plaintiffs' informal complaint was sufficient to exhaust their administrative remedies and thereby permit them to resort to a federal court for relief.[3] After weighing this purported distinction, we do not believe that plaintiffs have sufficiently pursued their administrative remedies.

■ It should be understood that it is not necessary for a complaint to be filed in order for the Office of Compliance to investigate a company's hiring practices.[4] It may, indeed it has an obligation to do so, make investigations of companies on its own initiative. Such an investigation is designed to assure that the company's hiring policies as a whole are satisfactory. It is not limited to or directed toward investigating the grievances of any particular person or groups of persons.[5]

The investigation triggered by plaintiffs' complaint was such a general inquiry. The Office of Compliance did not undertake the investigation solely or even primarily to rectify the evils alleged by the plaintiffs. The investigation undertaken occurred because the Office of Compliance had reason to believe that Grumman was not fulfilling its equal opportunity obligations. It is true that plaintiffs' oral complaints may have provided part or even all of the basis for this suspicion. The investigation which took place, however, was under-

2. 149 U.S.App.D.C. 358, 463 F.2d 304 (1972), aff'g 317 F.Supp. 376 (D.D.C. 1970).

3. Order placing case on Summary Calendar, No. 24,861 (D.C.Cir., 9 Mar. 1972).

4. 41 C.F.R. § 60–1.6 (1971).

5. We do not suggest that the plaintiffs may seek redress only of individual acts of discrimination. There is no reason to think that there are any unique difficulties in the OFCC's formal complaint procedures that would preclude consideration of broader claims. Neither is there any indication that the agency will fail to so interpret its mandate.

taken on the independent initiative of the Office of Compliance, was general in nature, and was not directed to investigating plaintiffs' charges. Plaintiffs could have instigated an investigation of their grievances, but they chose not to do so.

Since the general investigation that was conducted was not specifically directed at the evils alleged here, Grumman was not directly confronted with the plaintiffs' charges. Until the instant suit it has been offered no opportunity to explain its actions or even to hear the specific charges against it. It is both fundamentally illogical and unfair to contend that there has been a complete investigation of an accusation, when the accused has not been offered an opportunity to hear and answer the charges. Plaintiffs' contention that Grumman was informed of the charges by an informal petition circulated and signed by various Grumman employees is equally illogical. We reject the argument that the mere presentation of a list of grievances can, at least in these circumstances, take the place of well ordered administrative procedures and hearings.

Since there has been no investigation of the specific charges alleged and since Grumman has been given no chance to reply to such charges in an administrative hearing, there is, quite naturally, no administrative record of any investigations of the alleged wrongs for this court to review. The absence of an administrative record was one of the primary defects to which we referred in our decision in *Hadnott*.[6] The record is no less defective here. There is simply no record which shows the allegations made, the company's answers, and the administrative body's determination.

The District Court in this case was not being asked to review an administrative record. It was being asked to create a record of its own. The need to find facts and draw original conclusions entirely eliminates the usefulness of administrative investigations into such matters, and places a burden upon the judiciary that was designed to be borne by a specialized administrative body.

In summary, there are three fundamental reasons why a formal complaint is needed in a case such as this. First, a complaint is needed to focus the attention of the agency. The obligation of the Office of Compliance is to see that the company fulfills its equal employment duties in all its operations. It cannot be expected to address itself to alleged discriminatory practices on the basis of informal comments and allegations. Secondly, a formal complaint is necessary to tell the accused company what is allegedly wrong. Without this the accused cannot be expected to answer the allegations, and thereby completely illuminate the matter. Finally, a formal complaint is needed so that a record can be created regarding the specific allegations and in order to establish conclusively what, if anything, was done to remedy them. Even if a formal charge is made and the Office of Com-

---

6. The court in *Hadnott* stated that

[i]n the present posture of this case the plaintiffs came into the United States District Court without any administrative record whatsoever . . . . We cannot say with exactitude what will occur if the plaintiffs go to the Office of Federal Contract Compliance and file a complaint . . . . But we are assured that one of several things will happen: (1) the Office of Federal Contract Compliance may actually reject the complaint on the ground that the matter has already been investigated, compliance assured, and the matter closed; (2) the OFCC may accept the complaint, reopen the investigation, but deny plaintiffs any role in such investigation by offering testimony or otherwise; or (3), the OFCC may reopen the investigation, conduct an open hearing, in which plaintiffs are allowed to participate. In either eventuality, the plaintiffs will have definite administrative action to which to point when they then come into the United States District Court for review under the provisions of the Administrative Procedure Act.

Hadnott v. Laird, 149 U.S.App.D.C. at 362, 463 F.2d at 308 (1972).

pliance does nothing, that is a matter of record which can be corrected by judicial action.

This court is not insensitive to the plight of victims of discrimination. It is also aware that discrimination may exist in certain companies' employment policies. We are equally aware, however, that both the legislative and executive branches of the Federal Government have considered this problem and have provided avenues of relief from such evils in the form of Executive Order 11246 and Title VII of the Civil Rights Act of 1964. The plaintiffs are urged to avail themselves of these remedies by filing formal complaints with the appropriate offices. Such action would require little more effort than the oral complaints the plaintiffs made in 1968 and 1969, and considerably less effort than filing original actions in federal courts, and then pursuing fruitless appeals when they are directed to their administrative remedies. If the plaintiffs are unable to obtain justice through administrative remedies, they may then seek review and correction by the federal judiciary. The dismissal by the District Court is

Affirmed.