**Ronald WALLACE et al., Appellants,**

**v.**

**James T. LYNN, Secretary of Housing and Urban Development, et al.**

**No. 71–1629.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1973.

Decided Dec. 4, 1974.

Karl W. Carter, Washington, D. C., for appellants.

Raymond Banoun, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., for appellees. Harold H. Titus, Jr., U. S. Atty., entered an appearance for appellees.

Before ROBINSON, MacKINNON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The named appellants, four employees of the Department of Housing and Urban Development (HUD), brought this class action against appellees [1] alleging that they and 141 other HUD employees had unlawfully been suspended from employment because of absence without leave from their work posts on May 13, 1971. The action seeks declaratory relief and damages arising out of the allegedly wrongful suspensions. The District Court denied appellants' motion for a preliminary injunction, holding that they had not proven sufficient likelihood of success on the merits due to their failure to exhaust available administrative remedies.[2] We affirm.[3]

I.

The District Court made findings of fact describing the events that gave birth to this litigation. At approximately noon on May 13, 1971, a large group of HUD employees assembled outside the office of Lester P. Condon, HUD's Assistant Secretary for Administration, to present grievances regarding equal employment opportunity in HUD and specifically to seek a response to a May 4 memorandum submitted to HUD by appellant Ronald Wallace, co-chairman of the HUD Employees Task Force Against Racism.[4] Condon returned to his office at 12:30 p. m. and spoke with appellants, the apparent group leaders; he twice requested that they return to their jobs and ask all other employees to follow suit. Appellants refused, dis-

1. Appellees are the Secretary of HUD, two Assistant Secretaries and HUD's Director of Personnel.

2. Wallace v. Romney, Civil No. 1113-71 (D. D.C. June 29, 1971).

3. We have utilized the opportunity to review appellants' arguments in light of Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed. 2d 166 (1974), and Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), decided after this case was argued in this court.

4. The memorandum asked HUD to clarify and itemize its response to fourteen demands

that had originally been submitted by the Task Force shortly after a demonstration on October 13, 1970. The employees who participated in the October 13 incident were disciplined, resulting in a loss in pay; the demands were aimed at the elimination of alleged racial discrimination in HUD. These grievances were subsequently aired before an impartial appeals examiner who, on October 5, 1971, found a "pattern or practice" of discrimination at HUD as of October 13, 1970, and recommended that the disciplinary actions following the incident of that date be rescinded.

claiming any control over the assembled group. At about 1:00 p. m. Condon himself, without avail, asked the employees to return to work. The group finally dispersed at about 3:30 p. m. All employees identified by their supervisors as participants in the incident were charged with absence without leave and denied compensation for the period of the absence.

On May 21, 1971, HUD sent to the accused employees three types of letters giving notice of proposed actions of suspension. The first type, a proposed suspension for five days, was sent to the four appellants. It stated that their absences from work posts on May 13, and their refusal to comply with the orders to return and to request the return of demonstrators, amounted to insubordination. In addition, a letter noting absences without leave on May 13 and proposing a one-day suspension was sent to 146 other employees.[5] Both types of letters also informed the affected employees of their right to respond in writing to the charges within five days and directed them to the HUD Personnel Office for further information. A third kind of letter, not here relevant, was

sent to eight probationary employees notifying them of their absences without leave on May 13.

Replies were received within the five-day period from 52 of the 150 employees who had the right to reply. HUD found that five responses gave satisfactory justification for being off the job and that the other 47 responses gave unsatisfactory reasons. The latter group of employees was suspended for one day. Of the remaining 98 nonprobationary employees to whom letters were sent, 94 were ordered suspended for one day and the four appellants for five days. The individual notices to the 145 employees who were ordered suspended described available appeals to the Civil Service Commission and the HUD grievance procedures,[6] but none of these employees pursued these remedies before seeking relief from the District Court.[7]

## II.

In ruling on appellants' motion for a preliminary injunction, the District Court found that the suspensions, if unrestrained pending trial on the merits, would inflict irreparable injury on the affected employees.[8] The court denied

---

5. These two types of letters also referred to a HUD memorandum that had been issued following the October 13 incident. The memorandum emphasized that employees absent from work without authorization were absent without leave, and stated that regulations regarding employee conduct were to be strictly adhered to.

6. The pertinent part of the notices stated:
    You have a right to appeal this action to the Appeals Examining Office, U. S. Civil Service Commission, 1900 E Street, N. W., Washington, D. C. 20415 in accordance with Subchapter 3, Chapter 752 of the Federal Personnel Manual. Your appeal may be submitted at any time after receipt of this memorandum, but in no event later than 15 calendar days after the effective date of your suspension.
    You also have a right to request a review of this action under the grievance procedures of the Department of Housing and Urban Development in accordance with HUD Handbook 771.2, Employee Grievances. Mr. Furman Layman in the Personnel Office will make available to you the Civil Service Commission regulations and HUD Handbook 771.2.

The provisions of the Federal Personnel Manual referred to are at 5 C.F.R. §§ 752.-101-.402 (1974).

7. Twenty-nine employees, including two of the appellants herein, appealed their suspensions to the Civil Service Commission two days after the District Court denied appellants' motion for a preliminary injunction. On November 19, 1971, their appeals were denied on the ground that the procedures used by HUD complied with civil service regulations.

8. The District Court was of the view that appellants had shown the suspensions would cause irremediable harm to the affected employees despite the availability of retroactive reinstatement and back pay, 5 C.F.R. § 752.-402 (1974), 5 U.S.C. § 5596 (1970), and the possibility of expunging the suspensions from their personnel files, see 5 C.F.R. § 752.401 (1974). True there is no provision in the Civil Service regulations for a stay pending appeal to the Commission, see Sampson v. Murray, *supra* note 3, 415 U.S. at 93, 94 S.Ct. 937. (Douglas, J., dissenting), and HUD was not disposed to hold off the suspensions voluntarily. The Supreme Court, however, subsequently held that "the

the motion, however, because appellants had not proven sufficient probability of success on the merits.[9] The basis for this finding was appellants' failure to exhaust available administrative remedies, and in this court appellants have sought vigorously to justify that omission.

The scope of our review is restricted to a determination as to whether the District Court's action was founded on an erroneous legal premise or constituted an abuse of its discretion.[10] Four inquiries have traditionally governed decisions on motions for preliminary injunctions: (1) whether the movant has demonstrated a substantial likelihood of success on the merits, (2) whether denial of relief prior to a decision on the merits would cause the movant to suffer irreparable injury, (3) whether harm to the respondent from granting relief outweighs the possible injury to the movant, and (4) whether, and if so how, the public interest will be affected by granting or denying relief.[11] The factors unearthed by the first two inquiries compel us to affirm the denial of pretrial relief;[12] we regard the factors developed by the latter two as neutral in this case.[13]

It is well settled that resort to the judicial process must ordinarily be postponed until administrative remedies capable of rectifying claimed error have been pursued to finality.[14] Where a failure to exhaust administrative remedies would likely preclude an award of relief at the end of the litigation, the party seeking relief has not made a sufficient showing of probability of ultimate success to obtain a preliminary injunction.[15] A number of diverse policies have motivated application of the exhaustion doctrine, and some we find relevant to this appeal.

temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury," *id.* at 90, 94 S.Ct. at 952; moreover, the Court noted that damage to reputation is insufficient to establish the irreparable injury required to order preliminary relief in favor of federal civil servants, *id.* at 91, 94 S.Ct. 937. We are thus constrained to hold appellants did not "make a showing of irreparable injury sufficient in kind and degree to override [the] factors cutting against the general availability of preliminary injunctions in Government personnel cases." *Id.* at 84, 94 S.Ct. at 950.

9. At the same time, the court issued an order staying the suspensions pending this appeal.

10. Delaware & Hudson Ry. v. United Transp. Union, 146 U.S.App.D.C. 142, 158, 450 F.2d 603, 619, cert. denied, 403 U.S. 911, 91 S.Ct. 2209, 29 L.Ed.2d 689 (1971); A Quaker Action Group v. Hickel, 137 U.S. App.D.C. 176, 180, 421 F.2d 1111, 1115 (1969); District 50, UMW v. International Union, UMW, 134 U.S.App.D.C. 34, 35, 412 F.2d 165, 166 (1969).

11. Delaware & Hudson Ry. v. United Transp. Union, *supra* note 10, 146 U.S.App. D.C. at 158, 450 F.2d at 619; A Quaker Action Group v. Hickel, *supra* note 10, 137 U. S.App.D.C. at 181, 421 F.2d at 1116; Industrial Bank v. Tobriner, 132 U.S.App.D.C. 51, 54, 405 F.2d 1321, 1324 (1968).

12. The second factor is discussed in note 8, *supra.* The likelihood of success is examined below. See notes 14–28, *infra*, and accompanying text.

13. With respect to the third factor, the parties disagree as to the effect of a preliminary injunction on the daily operations of HUD. The District Court made no finding on this score, and we do not believe that restraint of the suspensions pending final determination of the merits would inflict appreciable injury on HUD. Appellants contend that a preliminary injunction would serve the public interest, because they were suspended for exercising First Amendment rights; appellees respond that the suspensions resulted from absence without leave and not from any exercise of constitutionally protected freedoms. The District Court has not yet passed on the validity of the asserted constitutional claims, nor do we, and appellants have not convinced us that the public interest factor is strong enough in any event to overcome the likelihood of loss on the merits for failure to exhaust administrative remedies.

14. FCC v. Schreiber, 381 U.S. 279, 296–297, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Lodge 1858, AFGE v. Paine, 141 U.S.App.D.C. 152, 166, 436 F.2d 882, 896 (1970); Sohm v. Fowler, 124 U.S.App.D.C. 382, 384–385, 365 F.2d 915, 917–918 (1966).

15. See Lodge 1858, AFGE v. Paine, *supra* note 14, 141 U.S.App.D.C. at 166, 436 F.2d at 896; Young v. Higley, 95 U.S.App.D.C. 122, 220 F.2d 487 (1955).

The Supreme Court has noted that administrative tribunals should generally be given the opportunity to correct their own errors and thereby obviate the need for judicial review.[16] This policy is particularly viable where an established scheme of decision making might be undermined by permitting circumvention of administrative procedures.[17] This court has noted that close adherence to the exhaustion rule in such circumstances will prevent waste of judicial resources and discourage forum shopping.[18]

Appellants contend that they are not bound by the general rule, because the administrative remedies available to them are inadequate and any endeavor to utilize them would be futile. It is beyond question that "the exhaustion requirement contemplates an efficacious administrative remedy,"[19] but appellees claim, and·we agree, that two possible courses in the administrative process could provide appellants with the relief they now seek in court. Appellants could have obtained review of their suspensions by the Civil Service Com-mission under government-wide regulations[20] or by HUD under its grievance procedures.[21] Among the grounds for relief urged in the District Court were lack of a hearing before suspension, failure by HUD to follow its own guidelines, and insufficiency of the time given appellants to respond to the notices of suspension.[22] It appears that each of these claims would lie within the scope of an appeal either to the Commission[23] or within HUD.[24] It is also clear that appellants' contention that the suspensions were by-products of racial discrimination could likewise be presented to the Commission.[25]

Appellants also assert that the exhaustion requirement is inapplicable, because they are seeking to remedy violations of constitutional rights over which the Commission and HUD have no jurisdiction. On the contrary, "[t]he very fact that constitutional issues are put forward constitutes a strong reason for not allowing . . . suit either to anticipate or take the place of [agency action]."[26] To be sure, neither the Commission nor HUD could finally set-

16. McGee v. United States, 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971); McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

17. McGee v. United States, *supra* note 16, 402 U.S. at 484, 91 S.Ct. 1565; McKart v. United States, *supra* note 16, 395 U.S. at 195, 89 S.Ct. 1657.

18. Sohm v. Fowler, *supra* note 14, 124 U.S. App.D.C. at 384, 365 F.2d at 917. See also McKart v. United States, *supra* note 16, 395 U.S. at 195, 89 S.Ct. 1657.

19. Lodge 1858, AFGE v. Paine, *supra* note 14, 141 U.S.App.D.C. at 166, 436 F.2d at 896. Three courts applied the exhaustion doctrine to deny preliminary relief for air traffic controllers following the 1970 "sick out;" the remedies there do not appear any more adequate than those available to appellants. United States v. Professional Air Traffic Controllers Org., 438 F.2d 79 (2d Cir. 1970), cert. denied, 402 U.S. 915, 91 S. Ct. 1373, 28 L.Ed.2d 661 (1971); Ogden v. Department of Transportation, 430 F.2d 660 (6th Cir. 1970); Henson v. United States, 321 F.Supp. 122 (E.D.La.1970).

20. 5 C.F.R. §§ 752.301 et seq. (1974).

21. Department of Housing and Urban Development, Personnel Policy—Employee Griev-ances Part 771.2 (1971) [hereinafter cited HUD Handbook].

22. We recognize that these claims could be framed as a due process challenge to the suspensions. See Arnett v. Kennedy, *supra* note 3. Nevertheless, the appeals could be resolved in favor of appellants on nonconsti-tutional grounds clearly within the jurisdiction of the agencies involved. See Freeman v. Shultz, 152 U.S.App.D.C. 16, 18, 468 F.2d 120, 122 (1972); Hadnott v. Laird, 149 U. S.App.D.C. 358, 361, 463 F.2d 304, 307 (1972); Douglas v. Hampton, 338 F.Supp. 18, 23 (D.D.C.1972). The presence of con-stitutional questions is, by itself, not enough to avoid operation of the exhaustion doc-trine. See text *infra* at notes 26–28.

23. 5 C.F.R. §§ 752.304(b)(1) (1974).

24. HUD Handbook, *supra* note 21, Part 771.-2, ¶ 7.

25. 5 C.F.R. § 752.302(b)(2) (1974). In fact, the employees racial grievances have been submitted to an impartial examiner. See note 4, *supra*.

26. Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 772, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1947). See Hadnott v. Laird, *supra* note 22, 149 U.S.App.D.C. at 363–365, 463 F.2d at 309–311.

tle the claim that appellants were victimized by racial discrimination or were protected by the First Amendment in their efforts to redress their grievances. But there are grounds on which appellants could succeed in nullifying the suspensions through the administrative process and eliminating any need for the courts to pass on the constitutional issues.[27] If the administrative appeals open to appellants and others similarly situated are unsuccessful, the constitutional issues will remain alive and judicial intervention in this employment dispute will become appropriate at that time.[28]

### III.

■ The failure to exhaust administrative remedies prevents appellants from demonstrating sufficient likelihood of success on the merits. As a result, the District Court properly denied their motion for a preliminary injunction. Appellants are free, of course, to now avail themselves of those remedies.[29] Initiation and pursuit of the administrative process does not appear particularly burdensome, and in the usual case need not long delay judicial resolution, if necessary. We repeat that "[i]f [appellants] are unable to obtain justice through administrative remedies, they may then seek review and correction by the federal judiciary." [30]

The judgment of the District Court appealed from is

Affirmed.

---

27. Appellants raise a number of First and Fifth Amendment claims. "This doctrine seems particularly applicable here because of the far reaching and difficult nature of the constitutional claims." Sohm v. Fowler, supra note 14, 124 U.S.App.D.C. at 385, 365 F.2d at 918.

28. Two cases in this circuit have held that the exhaustion doctrine applies despite claims of unconstitutional racial discrimination. Freeman v. Shultz, supra note 22; Hadnott v. Laird, supra note 22. In the First Amendment area, judicial action has also been postponed pending administrative proceedings. See Waters v. Peterson, 161 U.S.App.D.C. 265, 268, 495 F.2d 91, 94 (1973).

29. The Commission's regulations permit employee appeals up to 15 days after suspensions have been effected. 5 C.F.R. § 752.-304(c) (1974). The suspensions at issue here have been stayed pending this appeal, so the suspended employees may still prosecute their cases before the Commission. See note 7, supra.

30. Freeman v. Shultz, supra note 22, 152 U.S.App.D.C. at 20, 468 F.2d at 124. Such review would be forthcoming, after exhaustion of administrative remedies, if appellants were permitted to file a supplemental pleading alleging exhaustion. See Fed.R.Civ.P. 15(d); Lodge 1858, AFGE v. Paine, supra note 14, 141 U.S.App.D.C. at 168, 436 F.2d at 898.