**Phyllis Ann DALY, Appellant,**

v.

**Douglas COSTLE, Individually, Administrator of the Environmental Protection Agency, et al.**

No. 79–2533.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1981.

Decided Aug. 18, 1981.

Gary Howard Simpson, Bethesda, Md., for appellant.

Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U.S. Atty., John A. Terry, John R. Fisher and Jason D. Kogan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before ROBINSON, Chief Judge, McGOWAN, Circuit Judge, and JOHNSON,* District Judge.

Opinion PER CURIAM.

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. See *Daly v. Costle*, Civ. No. 79–0164 (D.D.C. Oct. 26, 1979) (memorandum and order) at 2, Appendix (App.) 87.

2. *Id.*

3. *Id.*

## PER CURIAM:

A federal employee unsuccessfully solicited in the District Court equitable relief against the employing agency and money damages from officials thereof individually. For failure to exhaust administrative remedies and then seek judicial review in the forum statutorily designated, we affirm on the first branch of this appeal. Finding, however, that the court erroneously failed to consider the damage claims, we remand for further proceedings on that score.

### I

Appellant, Phyllis A. Daly, a career civil servant, is employed at the Environmental Protection Agency (EPA).[1] In 1975, she became director of the agency's Office of Planning and Review, a subdivision of its Office of Research and Development, with a grade classification of GS–15.[2] Her career became stormy, however, in July of 1977, when appellee Stephen Gage became assistant administrator of the Office of Research and Development, and thus appellant's immediate supervisor.

Shortly after assuming his post, Gage launched a study of the feasibility of internal reorganization.[3] Within a week—on July 11, 1977—Gage relieved appellant of her duties as director of the Office of Planning and Review, and transferred her to a 120-day detail.[4] Appellant complained to the EPA's then-Administrator, appellee Douglas M. Costle, but he declined to disturb Gage's action.[5] Pending completion of the reorganization study, appellant was assigned to a second 120-day detail,[6] and shortly afterwards—in April, 1978—the Office of Planning and Review was abolished.[7] Appellant was put on a third 120-day detail, with a view to determination in the mean-

4. *Id.*

5. App. 19–23.

6. *Daly v. Costle, supra* note 1, at 2, App. 87.

7. *Id.* Appellant formally retained her position as director of the Office of Planning and Review, though she had no subordinates. *Id.* at 2 n.4, App. 87 n. 4.

time on where she should be relocated within the agency.[8]

On July 25, 1978, appellee Donald Sadler, an EPA personnel officer, requested that reduction-in-force procedures be initiated within the Office of Research and Development, and that appellant be placed permanently in another post.[9] Accordingly, on August 16, 1978, appellant was informed that her position as director of the Office of Planning and Review would be eliminated.[10] She was offered instead a program analyst's job, classified GS–14, and told that while she would continue to receive her GS–15 salary for two years she would, if an alternative situation was not found in the interim, then suffer a cutback in pay.[11] On September 21, 1978, following an inquiry from the Civil Service Commission,[12] to which appellant had protested the personnel actions affecting her,[13] Sadler offered appellant a position as a GS–15 environmental scientist, in lieu of the one previously tendered as a program analyst.[14] She accepted, with the understanding that she would continue her challenge.[15]

## II

Appellant filed two separate complaints with the Civil Service Commission, each adverting to her political affiliation as a Republican. The first charged that the reorganization was politically motivated and improperly conducted;[16] the second more generally alleged political harassment at EPA.[17] Each, however, was ultimately unsuccessful. On January 26, 1979, the Merit Systems Protection Board, which had succeeded the Civil Service Commission,[18] found "that partisan politics was not a factor in the reduction-in-force action by which appellant was affected."[19] Consequently the Board concluded that "there has been no violation of appellant's rights under the reduction-in-force regulations."[20] On October 26, 1979, the Board announced that it lacked jurisdiction to consider the harassment claim because "appellant alleges no violation of the basic requirements for employment practices."[21]

Shortly before the Board issued its first decision, however, appellant instituted the instant litigation in the District Court.[22] Naming Costle, Gage and Sadler as defendants in their individual as well as their official capacities, appellant asserted that the three had violated her Fifth Amendment due process rights by "ignor[ing] and misus[ing] Civil Service regulations and

---

**8.** *Id.* at 3, App. 88.

**9.** App. 25.

**10.** App. 29–30.

**11.** App. 29–30.

**12.** App. 35.

**13.** Appellant first contacted the Commission's Federal Employee Appeals Authority on June 15, 1978, asserting political harassment by Gage and Costle. App. 21–22. The Authority's response was that none of the actions alleged was within its jurisdiction, and accordingly it forwarded her complaint to the Commission's Bureau of Personal Management Evaluation. App. 23. On August 17, 1978, following the movement toward reduction-in-force, appellant submitted a further complaint to the Authority specifically addressing that personnel action. App. 32–34. Additional details appear in Part II *infra.*

**14.** App. 36–37.

**15.** App. 38.

**16.** See text *supra* at note 13.

**17.** In November, 1978, appellant in effect resubmitted her June 15 claim of harassment to the Federal Employee Appeals Authority. App. 113(a)–113(c).

**18.** See 5 U.S.C. §§ 1201 *et seq.* (Supp. III 1979).

**19.** *Phyllis A. Daly* (Merit Systems Protections Bd. Jan. 16, 1979) at 4 (order), App. 108. There had been no formal adversary hearing; witnesses were not called, and cross-examination was not permitted. Appellant and her opponents were, however, permitted to appear and comment on the record. See App. 111–112.

**20.** *Id.* at 5, App. 109.

**21.** *Phyllis Daly* (Merit Systems Protection Bd. Oct. 26, 1979) at 2 (order), App. 103.

**22.** Appellant filed her District Court complaint on January 16, 1979. The Board's first decision came on January 26, 1979.

procedures";[23] that together with "other unnamed conspirators [they had] conspired [against appellant] in violation of 42 U.S.C. § 1985(1)";[24] and that the named defendants had "conspired together for the purpose of depriving [appellant] and a class of persons who were in policy making positions during the previous (Republican) administration . . . of the equal protection of the laws or the privileges and immunities of the laws of the United States. . . ."[25] Appellant sought both money damages and injunctive relief.[26]

Again she was unsuccessful. The District Court, in an opinion issuing after the Board's first decision and practically simultaneously with its determination on the harassment claim,[27] deemed conclusive the Board's findings on the controversial reduction-in-force.[28] The Board's order sustaining the agency's action was entitled to effect, as a collateral estoppel, the court held, because "[p]laintiff was represented by counsel [before the Board], and had a fair opportunity to be heard."[29] And while the only issue considered by the Board in the decision under attack was the propriety of the reduction-in-force, the Board, said the court, had

> [a]nalyzed the RIF action and the partisan politics allegations in light of all the interactions between Defendants and Plaintiff. The Board found that there was no evidence that any of the Defendants' behavior was motivated by partisan politics . . . .

Since collateral estoppel precludes Plaintiff from asserting the Defendants' actions were motivated by partisan politics or that the RIF action was illegal, Plaintiff fails to state a claim for which relief can be granted.[30]

The court did not reach what it termed the sole remaining issue in the case—whether "putting Plaintiff on three consecutive details, even if unclouded by partisan politics, was nonetheless a misuse of Civil Service regulations."[31] That aspect of the claim, the court reminded, had never been subjected to agency review, and the failure to utilize that administrative remedy made judicial resolution inappropriate.[32]

Appellant requested reconsideration, pointing out that the Board had dismissed her political-harassment claim for lack of jurisdiction, and arguing that she was not given an adequate opportunity to litigate the reduction-in-force complaint.[33] The District Court was unmoved, however. Appellant, the court declared, had "not provided sufficient evidence to [the] Court reflecting that the [Board's] procedures were inadequate as a matter of law."[34] And, the court noted, appellant could have pursued administrative remedies within EPA itself.[35] Reconsideration was denied,[36] whereupon appellant came to this court.

### III

■ The District Court undoubtedly was right insofar as it concluded that an injunctive remedy is unavailable to appellant. To now be eligible for equitable relief—which was available administratively—appellant

---

**23.** *Daly v. Costle*, Civ. No. 79–0164 (filed Jan. 16, 1979) (complaint) at 11, App. 15.

**24.** *Id.*

**25.** *Id.* at 12, App. 16.

**26.** *Id.* at 12–13, App. 16–17.

**27.** The District Court announced its opinion on October 26, 1979, the same day that the Board's second order issued.

**28.** *Daly v. Costle, supra* note 1, at 7, App. 92. The Board's decision was not properly before the District Court on direct review, which lay only to this court. See text *infra* at notes 33–37.

**29.** *Daly v. Costle, supra* note 1, at 7, App. 92.

**30.** *Id.* at 8–9, App. 93–94.

**31.** *Id.* at 10, App. 95.

**32.** *Id.*

**33.** App. 97–100.

**34.** *Daly v. Costle*, Civ. No. 79–0164 (D.D.C. Nov. 16, 1979) (order denying reconsideration), App. 143.

**35.** *Id.*

**36.** *Id.*

must properly have pursued all appropriate administrative remedies,[37] and, of course, any avenue statutorily prescribed for ensuing judicial review. While appellant correctly took her reduction-in-force complaint to the Merit Systems Protection Board,[38] she did not seek review by this court of the Board's adverse ruling, as is statutorily required.[39] She cannot now short-circuit the review procedures congressionally mandated by collaterally attacking the Board's order in the District Court. And appellant's more general claims of political harassment are foreclosed by her failure to pursue any efficacious administrative remedy at all.[40] That appellant has alleged constitutional deprivations does not change the analysis, for so long as effective remediation conceivably could have been achieved through the administrative process, exhaustion was prerequisite.[41]

■ This conclusion, however, does not dispose of the case. Appellant, charging political bias as well as improper personnel actions, brought suit against the named defendants in their individual as well as official capacities, and sought money damages as well as injunctive relief.[42] The exhaustion rule did not extend to the damage claims appellant asserted against her adversaries personally and individually, for obviously they were not redressable administratively.[43] Yet the District Court never considered these claims, apparently because it believed that they all were grounded essentially on the allegations of political harassment, and that those allegations had been rejected by the Board for want of supporting evidence.[44]

If indeed this was the District Court's rationale, it was plainly mistaken. The Board did not, as the court stated, find "that there was no evidence that any of Defendants' behavior was motivated by partisan politics.[45] On the contrary, the Board explicitly declared itself "without jurisdiction to determine whether any [actions other than the reduction-in-force] taken by [EPA] were motivated by partisan politics."[46] Thus, several harassment charges against the appellees individually were never addressed at either the administrative[47] or the judicial levels. Appellant is entitled to judicial asessment of those claims,[48] and the present record leaves us in the dark as to whether they were dealt with, if at all, on a legally sustainable theory.

---

**37.** See, e. g., Wallace v. Lynn, 165 U.S.App. D.C. 363, 366–368, 507 F.2d 1186, 1189–1191 (1974); Lodge 1858, AFGE v. Paine, 141 U.S. App.D.C. 152, 166, 436 F.2d 882, 896 (1970); Sohm v. Fowler, 124 U.S.App.D.C. 382, 384–385, 365 F.2d 915, 917–918 (1966).

**38.** See text supra at note 16.

**39.** See 5 U.S.C. § 7703 (Supp. III 1979).

**40.** Appellant brought her claims of political harassment directly to the Board, which disclaimed jurisdiction. See text supra at notes 17, 21. She could readily have availed herself of EPA's internal grievance procedures. See App. 133–142.

**41.** See, e. g., Wallace v. Lynn, supra note 37, 165 U.S.App.D.C. at 366–367, 507 F.2d at 1190–1191; Freeman v. Schultz, 152 U.S.App.D.C. 16, 18, 468 F.2d 120, 122 (1972); Hadnott v. Laird, 149 U.S.App.D.C. 358, 363–365, 463 F.2d 304, 309–311 (1972).

**42.** See text supra at notes 22–26.

**43.** Since neither EPA nor the Board is empowered to adjudicate claims for money damages against individuals, see 5 U.S.C. § 1205 (Supp.

III 1979) and App. 133, 142, resort to their grievance mechanisms would have been futile. See, e. g., Wallace v. Lynn, supra note 37, 165 U.S.App.D.C. at 367 & n.19, 507 F.2d at 1190 & n.19; Lodge 1858, AFGE v. Paine, supra note 37, 141 U.S.App.D.C. at 166, 436 F.2d at 896.

**44.** See text supra at note 30.

**45.** See text supra at note 30.

**46.** Phyllis A. Daly, supra note 19, at 4–5, App. 108–109.

**47.** We have already observed that these charges were not appropriate subjects of the exhaustion doctrine. See note 43 supra and accompanying text.

**48.** Appellant is not foreclosed from using evidence concerning the reduction-in-force in connection with her claims for money damages against the appellees individually. The Merit Systems Protection Board found the reduction-in-force valid after a proceeding allowing neither for presentation of witnesses nor cross-examination. See note 17 supra. In a comparable situation, this court has refused to give

We affirm, then, the District Court's ruling that appellant cannot now obtain equitable relief through the courts. But it is for the District Court to address, in the first instance, the difficult factual and legal issues posed by appellant's claims for money damages against the appellees individually.[49] If that has already been done, and the claims were denied on a ground other than the one we have rejected,[50] the court must at least, articulate its reasons for the edification of the litigants, and of this court in the event of subsequent review. The case is accordingly remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

estoppel effect to an agency determination because of " 'differences in the quality or extensiveness of the procedures' " available at trial. *Nasem v. Brown,* 193 U.S.App.D.C. 416, 421, 595 F.2d 801, 806 (1979), quoting Restatement (Second) of Judgments § 68.1(c) (Tent. Draft No. 4, 1977). Appellant cannot, however, relitigate the validity of the reduction-in-force for purposes of injunctive relief barred by the exhaustion doctrine. See text *supra* at notes 37–41.

49. See *Kennedy v. Silas Mason Co.,* 334 U.S. 249, 256–257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1387, 1350–1351 (1948) ("summary procedures, however salutary where issues are clear-cut and simple, provide a treacherous record for deciding issues of far-flung import, on which [a court] should draw inferences with caution from complicated courses of legislation ... and practice"). See also *Marine Space Enclosures, Inc. v. FMC,* 137 U.S.App.D.C. 9, 21, 420 F.2d 577, 589 (1969).

50. See text *supra* at notes 45–48.