United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 21, 1997 Decided November 14, 1997 

 No. 97-1036

 American Coalition for Competitive Trade, 

 Petitioner

 v.

 William J. Clinton and 

 United States of America, 

 Respondents

 Government of Canada, 

 Intervenor

 Complaint and Petition for Declaratory Judgment

 Donald R. Dinan argued the cause and filed the briefs for 
petitioner.

 Douglas Letter, Attorney, United States Department of 
Justice, argued the cause for respondents, with whom Frank 
W. Hunger, Assistant Attorney General, Mary Lou Leary, 


United States Attorney, Stephen W. Preston and Anne M. 
Lobell, Attorneys, United States Department of Justice, were 
on the brief.

 Homer E. Moyer, Jr. and Mark V. Holmes were on the 
brief for intervenor Government of Canada.

 Elliot J. Feldman and Stephen M. Truitt were on the brief 
for amicus curiae Gouvernement du Quebec.

 Robert E. Herzstein and Perry S. Bechky were on the brief 
for amicus curiae Government of Mexico.

 Rufus E. Jarman was on the brief for amicus curiae 
Customs and International Trade Bar Association.

 Before: Wald, Williams and Rogers, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Wald.

 Wald, Circuit Judge: Petitioner, the American Coalition 
for Competitive Trade ("ACCT"), has filed an original action 
in this court to challenge the constitutionality of the bination-
al panel review provisions in the United States-Canada Free-
Trade Agreement Implementation Act of 1988, Pub. L. No. 
100-449, 102 Stat. 1851, and the North American Free Trade 
Agreement Implementation Act, Pub. L. No. 103-182, 107 
Stat. 2057 (1993) ("NAFTA Act"), which implement the North 
American Free Trade Agreement with Canada and Mexico, 
Dec. 17, 1992, Can.-Mex.-U.S., 32 I.L.M. 605 (1993) 
("NAFTA").

 We conclude that petitioner does not meet the constitution-
al requirements for standing and does not satisfy the jurisdic-
tional requirements of the NAFTA Act, requirements whose 
constitutionality we uphold. Accordingly, we dismiss this 
case.

 I. Background

 Any private party that falls within the definition of an 
"interested party" may bring an administrative claim to the 
International Trade Administration of the Department of 
Commerce charging that an importer to the United States is 


"dumping" his goods at below-market prices in order to harm 
his American competitors, or is unfairly benefitting from 
subsidies from his nation of origin. Once an interested party 
has made such a charge, the Department of Commerce 
determines whether dumping has occurred or whether an 
exporting nation has provided a subsidy. See 19 U.S.C. 
ss 1671b(b), 1673b(b) (1994). If the Commerce Department 
finds dumping or a subsidy, the United States International 
Trade Commission then determines whether the importer's 
behavior has actually injured or threatened to injure a U.S. 
industry. See 19 U.S.C. ss 1671b(a), 1673b(a) (1994). The 
statutes define "interested party" broadly to include, inter 
alia, "a manufacturer, producer, or wholesaler in the United 
States of a domestic like product"; "a certified union or 
recognized union or group of workers which is representative 
of an industry engaged in the manufacture, production, or 
wholesale in the United States of a domestic like product"; 
and "a trade or business association a majority of whose 
members manufacture, produce, or wholesale a domestic like 
product in the United States." 19 U.S.C. s 1677(9)(C)-(E) 
(1994).1

 The NAFTA Act creates a special procedure for reviewing 
such administrative determinations when they concern goods 
imported from Canada or Mexico. Under this scheme, any 
"interested party" that appeared in the administrative pro-
ceedings before the Commerce Department or the Interna-
tional Trade Commission may request a binational panel to 
review the decisions those domestic agencies made. See 19 
U.S.C.A. s 1516a(g)(8), 1516a(f)(3) (Supp. 1997). Panel mem-
bers are selected by the United States and the other nation 
involved, with the United States Trade Representative ap-
pointing this country's panel candidates. See 19 U.S.C.A. 
s 3432(a)(1)(D)-(E) (Supp. 1997); NAFTA Annex 1901.2, 32 
I.L.M. at 687. These panels apply the substantive law of the 

__________
 1 "The term 'domestic like product' means a product which is like, 
or in the absence of like, most similar in characteristics and uses 
with, the [imported] article subject to [the antidumping and coun-
tervailing duty laws]." 19 U.S.C. s 1677(10) (1994).


importing country. See NAFTA Art. 1904(2), 32 I.L.M. at 
683. Their decisions are binding and domestic judicial review 
of panel determinations is prohibited. See 19 U.S.C.A. 
s 1516a(g)(2) (Supp. 1997). While either of the governments 
involved may request a binational "extraordinary challenge 
committee" to review a panel decision, private parties cannot 
initiate such a process. See, e.g., 19 U.S.C.A. 
s 1516a(a)(5)(C)(ii) (Supp. 1997); NAFTA Art. 1904.13, 32 
I.L.M. at 683; NAFTA Annex 1904.13, 32 I.L.M. at 688. The 
binational panels, however, are only empowered to uphold the 
final determinations of domestic agencies or to remand cases 
to these agencies for further action consistent with the panel's 
decision. They do not consider the constitutionality of the 
binational panel review system under United States law. See 
NAFTA Art. 1904.8, 32 I.L.M. at 683.

 Instead, Congress has granted this court exclusive original 
jurisdiction to review all constitutional challenges to the bina-
tional panel review provisions. See 19 U.S.C.A. 
s 1516a(g)(4)(A) (Supp. 1997). Under the NAFTA Act, 19 
U.S.C.A. s 1516a(g)(4)(C) (Supp. 1997), "an interested party" 
that participated in a binational review panel proceeding may 
commence such a constitutional challenge "within 30 days 
after the date of publication in the Federal Register of notice 
that binational panel review has been completed."

 ACCT, "a non-profit organization established for the pur-
pose of protecting American jobs and workers from unfair 
trade practices," Petitioner's Brief at 5, contends that the 
binational panel review system infringes on the sovereignty of 
the United States and violates several constitutional provi-
sions, including the Appointments Clause, Article III, and the 
Due Process Clause. ACCT also challenges the constitution-
ality of section 1516a(g)(4)(C)'s exhaustion requirement, and 
does not claim to meet the provision's criteria. Specifically, 
ACCT does not allege that it or any ACCT members have 
participated in any binational panel review proceeding whose 
completion was published within thirty days of ACCT's filing 
of this action.


 Indeed, ACCT alleges only one connection to any binational 
panel proceeding of any sort. According to the affidavit of 
William J. Gill, ACCT's president, "members of the Coalition 
work in industries which have suffered material injury as 
determined by the U.S. International Trade Commission in 
antidumping and countervailing duty cases concerning im-
ports from Canada and Mexico. Certain of these cases have 
been appealed to the binational panels where the decision of 
the United States government was overturned by the bina-
tional panel causing significant numbers of our members [to 
lose] their jobs, i.e., the Softwood Lumber cases." Affidavit 
of William J. Gill, Petitioner's Reply Brief App. at 1-2 (inter-
nal citations omitted) ("Gill Affidavit"). The "Softwood Lum-
ber cases" is an apparent reference to a 1994 suit by the 
Coalition for Fair Lumber Imports, which is a member 
organization in ACCT. The Coalition for Fair Lumber Im-
ports had participated in a binational panel proceeding as an 
interested party and, having lost in that proceeding, brought 
suit in this court to challenge the constitutionality of the 
binational panel review system. The parties settled this suit, 
however, before the court issued any decision on the merits. 
See Coalition for Fair Lumber Imports v. United States, No. 
94-1627 (D.C. Cir. filed Sept. 14, 1994, withdrawn by volun-
tary motion to dismiss Jan. 5, 1995). ACCT concedes that it 
has no evidence that any of its other members have ever 
participated in a binational panel proceeding.

 II. Analysis

A.Standing

 As the party that seeks to invoke this court's jurisdiction, 
ACCT is required to "clearly ... allege facts" demonstrating 
its standing under Article III. United States v. Hays, 115 
S. Ct. 2431, 2435 (1995) (quoting Warth v. Seldin, 422 U.S. 
490, 518 (1975)). ACCT has not established the causation 
necessary to meet the requirements of constitutional stand-
ing.

 Article III standing contains three "irreducible" elements. 
First, the petitioner must have suffered an injury that "is (a) 
concrete and particularized, and (b) actual or imminent, not 


conjectural or hypothetical. Second, there must be a causal 
connection between the injury and the conduct complained 
of--the injury has to be fairly traceable to the challenged 
action of the defendant, and not the result of the independent 
action of some third party not before the court. Third, it 
must be likely, as opposed to merely speculative, that the 
injury will be redressed by a favorable decision." Lujan v. 
Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations 
and internal quotation and alteration marks omitted). For an 
association to have standing to sue on behalf of its members, 
its members must " 'otherwise have standing to sue in their 
own right.' " Pennell v. City of San Jose, 485 U.S. 1, 7 (1988) 
(quoting Hunt v. Washington Apple Advertising Comm'n, 
432 U.S. 333, 343 (1977)); see also Int'l Union, United 
Automobile, Aerospace and Agricultural Implement Workers 
v. Brock, 477 U.S. 274, 282 (1986); Hunt, 432 U.S. at 343 
("[A]n association has standing to bring suit on behalf of its 
members when: (a) its members would otherwise have stand-
ing to sue in their own right; (b) the interests it seeks to 
protect are germane to the organization's purpose; and (c) 
neither the claim asserted nor the relief requested requires 
the participation of individual members in the lawsuit.").

 Petitioner has totally failed to establish the requisite causal 
connection between its alleged injury and the binational panel 
system.2 ACCT does not contend that its standing stems 
from participation in any binational panel proceeding. In-
deed, it concedes that it has no evidence that any of its 
members has ever participated in a binational panel proceed-
ing, with the exception of the Coalition for Fair Lumber 
Imports case, which was filed in this court several years ago 
and cannot confer standing because it was settled. Instead, 
ACCT recites the importance of enforcing federal laws 
against dumping and import subsidies and reviews statistical 
evidence about the adverse consequences that NAFTA has 
allegedly had on income equality and exporting in the United 
States. But with Coalition for Fair Lumber Imports except-

__________
 2 This failure obviates the need for us to address ACCT's claims 
under the other two prongs of the test for Article III standing.


ed, ACCT never identifies any specific instances in which a 
binational panel decision--or even the general binational pan-
el scheme--harmed an ACCT member.

 In the only affidavit attached to petitioner's filing, ACCT 
President William J. Gill does little more to explain why 
ACCT's alleged injury is causally connected to the binational 
panel system. Gill alleges, for instance, that "[m]any of 
[ACCT's] members have lost their jobs as a result of NAFTA 
as certified by the U.S. Department of Labor and are cur-
rently receiving NAFTA adjustment assistance from the fed-
eral government." Gill Affidavit at 1. However, Gill fails to 
allege any connection between an ACCT member and a 
binational panel proceeding rather than NAFTA in general 
(with the exception of the Coalition for Fair Lumber Imports 
case discussed above).

 This is simply not enough. With work or with time, ACCT 
may be able to locate a member who has constitutional 
standing to challenge the binational panel review system. 
But it has not yet successfully borne that burden. See Hays, 
115 S. Ct. at 2435.

 B.The NAFTA Act's Jurisdictional Requirements

 ACCT also fails to satisfy the statutory requirements for 
challenging the constitutionality of the binational panel sys-
tem. The NAFTA Act grants this court exclusive original 
jurisdiction over constitutional attacks on the binational pan-
els. See 19 U.S.C.A. s 1516a(g)(4)(A) (Supp. 1997); see also 
National Council for Industrial Defense, Inc. v. United 
States, 827 F. Supp. 794, 797-800 (D.D.C. 1993) (holding that 
section 1516a(g)(4)(A) grants the D.C. Circuit exclusive juris-
diction over all constitutional challenges to the binational 
panels). It further provides, in 19 U.S.C.A. s 1516a(g)(4)(C) 
(Supp. 1997), that only "an interested party" who participated 
in a binational panel proceeding may commence a constitu-
tional challenge to the binational panel scheme and requires 
these interested parties to file a constitutional action in this 
court "within 30 days after the date of publication in the 


Federal Register of notice that binational panel review has 
been completed."

 ACCT does not assert that it satisfies section 
1516a(g)(4)(C)'s exhaustion requirement.3 In addition, it con-
cedes that at least some of its members fall within the 
definition of "an interested party"; in an appropriate case, 
they could pursue the administrative steps needed to acquire 
statutory standing to challenge the constitutionality of the 
binational panels. (As noted above, the NAFTA Act defines 
"interested party" broadly. See 19 U.S.C. s 1677(9)(C)-(E) 
(1994).) ACCT, however, assumes that it already has Article 
III standing to challenge the constitutionality of the bination-
al panels and contends that section 1516a(g)(4)(C) is unconsti-
tutional because it imposes an exhaustion requirement that 
does not allow everyone with Article III standing to sue.4

 ACCT mischaracterizes the nature of the issue before us.5 
Article III sets the maximum boundaries of permissible 

__________
 3 ACCT concedes, as it must, that binational review of the Coali-
tion for Fair Lumber Imports case was completed (far) more than 
30 days before the present action was filed. Moreover, that case 
has already been settled.

 4 ACCT may also be objecting to the fact that Congress has 
imposed a ripeness requirement in providing that no constitutional 
claims may be raised against the binational panel system until one 
of the binational panels has issued a final judgment. See 19 
U.S.C.A. s 1516a(g)(4)(C) (Supp. 1997). Such a claim, however, is 
meritless. The ripeness requirement in section 1516a(g)(4)(C) is 
entirely reasonable and quite common. It ensures that constitu-
tional challenges to the binational panels are sufficiently concrete to 
allow for meaningful review and prevents this court from issuing 
advisory opinions in violation of Article III. See e.g., Abbott Lab. v. 
Gardner, 387 U.S. 136, 148-49 (1967) (noting basic rationale of 
ripeness doctrine); Committee For Effective Cellular Rules v. FCC, 
53 F.3d 1309, 1316 (D.C. Cir. 1995) (holding that agency action must 
be final before review is available).

 5 In addition, ACCT's concession that it does not meet the 
requirements of section 1516a(g)(4)(C) renders its decision to bring 
suit in this court, rather than a United States district court, 
inexplicable. Section 1516a(g)(4)(C) is the only source of this 
court's original jurisdiction over constitutional challenges to the 
binational panel system. Even if that statute should be found 


standing, but does not preclude Congress from creating addi-
tional statutory exhaustion requirements. To be sure, a 
statute that totally precluded judicial review for constitutional 
claims would clearly raise serious due process concerns. See 
Webster v. Doe, 486 U.S. 592, 603 (1988); Bowen v. Michigan 
Academy of Family Physicians, 476 U.S. 667, 681 n.12 
(1986); Johnson v. Robison, 415 U.S. 361, 366-67 (1974); 
Bartlett v. Bowen, 816 F.2d 695, 703 (D.C. Cir. 1987). Along 
the same lines, there may well be limits as to how severely 
Congress can restrict the route to judicial review of constitu-
tional challenges when it keeps that route partially open. 
This, however, is not such a case. Section 1516a(g)(4)(C) 
merely establishes reasonable requirements that ensure that 
plaintiffs have a concrete stake in the proceedings and have 
exhausted their administrative remedies before they may 
challenge the constitutionality of the binational panel review 
system.

 Indeed, section 1516a(g)(4)(C)'s exhaustion requirement is 
so typical that striking it down as unconstitutional could 
render a substantial portion of the United States Code open 
to constitutional attack. Many agency adjudication schemes 
require petitioners to exhaust their administrative remedies 
before bringing their constitutional claims to Article III 
courts. For instance, in Cronin v. FAA, 73 F.3d 1126 (D.C. 
Cir. 1996), petitioner challenged the constitutionality of Fed-
eral Aviation Administration regulations establishing the pro-
cedures under which air carriers test their employees for 
alcohol and drug use. See id. at 1133. This court, however, 
refused to consider Mr. Cronin's constitutional challenge be-
cause the governing administrative statute, 49 U.S.C. 
s 46110(d) (1994),6 precluded judicial review of any claims 

__________
unconstitutional, ACCT has no other ground for bringing its action 
in the court of appeals. See 28 U.S.C. s 1331 (1994) ("The district 
courts shall have original jurisdiction of all civil actions arising 
under the Constitution, laws, or treaties of the United States.").

 6 The statute provides that a reviewing "court may consider an 
objection to an order of the [DOT] Secretary or [the FAA] Adminis-
trator only if the objection was made in the proceeding conducted 


petitioner had failed to raise in his objections to the regula-
tions during administrative rulemaking. See Cronin, 72 F.3d 
at 1133 & n.7. Similarly, in Steadman v. Governor, U.S. 
Soldiers' & Airmen's Home, 918 F.2d 963 (D.C. Cir. 1990), 
this court held that the Federal Service Labor- 
Management Relations Act required former federal employ-
ees who alleged that their discharge violated their due pro-
cess and statutory rights to first seek statutory relief before 
the Federal Labor Relations Authority before pursuing their 
constitutional claim in United States District Court. See id. 
at 965; see also Wallace v. Lynn, 507 F.2d 1186, 1189-90 
(D.C. Cir. 1974) (requiring plaintiff to exhaust administrative 
remedies before seeking relief in district court on constitu-
tional ground).7

 ACCT's attempt to distinguish its challenge to section 
1516a(g)(4)(C) from an attack on all statutes that first channel 
petitioners with constitutional objections into agency adjudi-
cation is unconvincing. ACCT argues that Congress enacted 
section 1516a(g)(4)(C) because it was gravely concerned about 
the constitutionality of the binational panel review system and 
accordingly decided to insulate this scheme from constitution-
al review. But, even if such an argument were persuasive, 
ACCT has presented absolutely no evidence to support its 
interpretation of legislative motivation. To the contrary, the 
statutory scheme itself, which vests original jurisdiction over 
constitutional challenges in this appellate court, illustrates 
Congress' desire to expedite judicial review of the binational 
panel scheme, while limiting the petitioner class to people 

__________
by the Secretary or Administrator or if there was a reasonable 
ground for not making the objection in the proceeding." Id.

 7 To be sure, administrative agencies (particularly binational 
ones) cannot resolve constitutional issues. Instead, the premise of 
administrative exhaustion requirements for petitioners with consti-
tutional claims is that agencies may be able to otherwise address 
petitioners' objections, allowing the courts to avoid unnecessary 
constitutional decisions. See, e.g., Wallace, 507 F.2d at 1189-90; 
Nat'l Treasury Employees Union v. FLRA, 986 F.2d 537, 540 (D.C. 
Cir. 1993); Meredith Corp. v. FCC, 809 F.2d 863, 872 (D.C. Cir. 
1987).


who have exhausted their administrative remedies and clearly 
have constitutional standing. See 19 U.S.C.A. 
s 1516a(g)(4)(A) (Supp. 1997). The legislative history only 
confirms this view. See H.R. Rep. No. 100-816, pt. 1, at 33 
(1988) ("The expedited process ensures that if there is any 
challenge to the constitutionality of the binational panel re-
view system, any resulting uncertainty about implementation 
of these provisions of the Agreement will be resolved quick-
ly."); H.R. Rep. No. 100-816, pt. 4, at 23 (1988) ("Constitution-
al challenges can only be commenced after an exhaustion of 
the binational panel review process. The approach was se-
lected to avoid any potential problems with standing. Sec-
ond, an exhaustion requirement may eliminate the basis for a 
constitutional challenge. For example, a party who fears that 
the panel process may result in the denial of due process will 
hopefully have a different view after the process is over.").

 In sum, ACCT has not met the requirements of section 
1516a(g)(4)(C), and has provided no ground on which to rule 
that this provision is unconstitutional.

 III. Conclusion

 ACCT has failed to satisfy Article III's standing require-
ments for challenging the constitutionality of the binational 
panel review system. It also concededly fails to meet the 
NAFTA Act's statutory exhaustion requirements, require-
ments that we find constitutional. For the foregoing reasons, 
we therefore dismiss petitioner's claim.

 So ordered.