2003 OK CIV APP 68

In the Matter of the Complaint Against: MAINSTREET PHARMACY, (7–4481), 2205 W. Main, Norman, OK, 73069 and Clayton Fuchs, RPh # 12790, 9710 Kings Link Circle, Rowlett, TX 75089.

**Clayton Fuchs and Mainstreet Pharmacy, Appellants,**

**v.**

**Oklahoma State Board Of Pharmacy, Appellee.**

No. 97,489.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 17, 2003.

J.W. Coyle, III, Catherine M. Burton, Coyle, McCoy & Burton, Oklahoma City, OK, For Appellants.

Grant E. Moak, Assistant Attorney General, State of Oklahoma, Oklahoma City, OK, For Appellee.

Opinion by KENNETH L. BUETTNER, Judge.

¶1 The State Board of Pharmacy revoked Clayton Fuchs' permit to establish a pharmacy and his professional pharmacist's license on multiple grounds. Mainstreet Pharmacy was an internet pharmacy and had no walk-in customers in its Norman, Cleveland County, Oklahoma, store. Fuchs appealed the Board's order to the District Court of Cleveland County. The State Board of Pharmacy (Board) moved to transfer venue to Oklahoma County, the site of its residence and where it issued the license and permit. The matter was transferred, but through inadver-

tence, the administrative record was not forwarded to Oklahoma County. The District Court of Oklahoma County nonetheless issued an order affirming the Board's decision. We hold that a review of an administrative order is fatally flawed if the District Court on review does not have the record before it. Consequently, the order of the District Court on appeal is reversed. Further, because the permit to operate the pharmacy resulted in adverse action against the pharmacy, we hold that venue was properly laid in Cleveland County and direct that the matter be transferred to Cleveland County for review.

¶2 Fuchs contends that the review of the administrative order by the District Court was incomplete; that the order granting transfer of venue was contrary to law; and that revocation of the license and permit was excessive in light of the circumstances and nature of the charges.

■ ¶3 The revocation of the pharmacy license and the permit to establish a pharmacy were procedures subject to the Oklahoma Administrative Procedures Act, 75 O.S. Supp. 1997 § 250 et seq. What constitutes review of the agency order is specifically circumscribed. Title 75 section 321 states:

The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

■ ¶4 In the case at bar, the District Court accepted briefs and heard oral argument. There was no allegation of irregularities in the administrative process and, consequently, no witnesses testified. Unfortunately, the reviewing court did not have the administrative record before making its decision and the parties did not realize this until after the order was entered. The basis of review is on the record. What happened here was a reliance on the briefs and argument. However, briefs and argument do not constitute evidence.[1] In Fuchs' ap-

---

**1.** 75 O.S. Supp.1992 § 320 allows the parties to stipulate to shorten a record. However, there is

absolutely no law which allows the reviewing

pellate brief in the District Court, he raises two allegations of error: that there was no statutory authority to revoke his license and permit, and that the revocation of his license was clearly erroneous in view of the evidence in the record. He cited parts of the transcript of the administrative hearing in support of his arguments. The District Court impermissibly denied itself meaningful review because it did not have the record before it rendered its decision.

¶ 5 The Board argues that the briefs contained sufficient record information to support the District Court's decision. We hold, however, that briefs are insufficient, even when they cite parts of the record, because they are not evidence and their purpose is to persuade the reviewing court. The law requires the Court to have the record. There is no way any party or the Court can waive this requirement. Where an appeal of an agency action raises sufficiency of the evidence issues, it is error not to review the administrative record.

¶ 6 The Board also states that even if failure to review the record is erroneous, because this reviewing court does have the administrative record, then the error is harmless. However, the Act provides that there is a right to two reviews, once in District Court and thereafter, if the party aggrieved by the order of the District Court desires, in the Supreme Court. 75 O.S. Supp.1992 § 318 (judicial review in district court); 75 O.S.2001 § 323 (judicial review of district court's order by appeal to Oklahoma Supreme Court). The District Court's order on review was not supported by the record and must be reversed. See *Freeman v. Shultz* 468 F.2d 120 (C.A.D.C.1972)(When there is no administrative record, there is no showing of the allegations, the answers to the allegations or the administrative body's determination).

¶ 7 With respect to venue, there were two entities against whom complaints were made: Clayton Fuchs (pharmacist license) and Mainstreet Pharmacy (permit to operate a pharmacy). Each entity was charged with nine counts. After the administrative hearing, Clayton Fuchs, in his capacity as pharmacy permit holder (Mainstreet Pharmacy) was found guilty on all counts except he was found not guilty on Count VII (having an "employee physician" write prescriptions for controlled dangerous substances which were not issued for legitimate medical purposes). Clayton Fuchs, as a pharmacist, was found guilty on all nine counts of violation of the Board's rules.[2]

¶ 8 The venue of review proceedings is provided in Title O.S.75 2001 § 318(B)(2), which states:

> ... proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated....

¶ 9 In the case at bar, there are two aggrieved entities, the pharmacist and the pharmacy. The pharmacist is not a resident of Oklahoma. He has a constitutionally protected property interest in his license. *Johnson v. Board of Governors of Registered Dentists of the State of Oklahoma,* 1996 OK 41, 913 P.2d 1339; *Mills v. New Mexico State Board of Psychologist Examiners,* 1997–NMSC–028, 123 N.M. 421, 941 P.2d 502. Venue is at the option of the petitioner. The statute does not permit the Board to request for transfer of venue. The Board could have moved to dismiss because of improper venue, but did not do so. Only if the "property interest affected" could not be said to be in Cleveland County would venue be improper there.

¶ 10 Admittedly, one property interest affected was the permit itself. The permit for the pharmacy was issued by the Board from its seat in Oklahoma County, and the Board claims the situs of the permit is therefore Oklahoma County. While this may be true, then Fuchs, as petitioner, could have filed the petition for review in Oklahoma County. That does not answer the question whether some property interest of Fuchs, affected by

court to reach a decision without any of the administrative record.

---

2. The nine counts are set forth in the Appendix to this opinion.

the Board's action, was also situated in Cleveland County.

¶ 11 The Board's orders affected the physical business of the pharmacy. It shut the pharmacy down. Even though it was an internet pharmacy, there was an office, Mainstreet Pharmacy in Norman, Cleveland County, Oklahoma. A permit to operate a pharmacy is not the same as a professional license. And it must have a physical location. The pharmacy's physical location was in Cleveland County. Venue was properly placed in the District Court of Cleveland County and transfer to Oklahoma County was error. Section 318(B)(2) gives the venue option to the petitioner and is broad enough to include the physical location of the pharmacy.

¶ 12 We will not address the other issues presented to the District Court for review because we remand the case with directions to transfer this matter to the District Court of Cleveland County to conduct the review pursuant to law.

¶ 13 The order of the District Court of Oklahoma County affirming the Board of Pharmacy's order revoking the permit to establish and operate a pharmacy and revoking Fuchs' license to practice pharmacy in Oklahoma is REVERSED and the matter is REMANDED to the District Court of Cleveland County, Oklahoma with directions to proceed with Appellants' petition for review.

ADAMS, P.J., and JOPLIN, C.J., concur.

*APPENDIX*

(The complaint filed by the Board against Clayton Fuchs, pharmacist and Clayton Fuchs as manager of Mainstreet Pharmacy, alleged nine violations by respondents of the Oklahoma Pharmacy Act, 59 O.S.1991 § 353.1 *et seq*, Titles 535 and 475 of the Oklahoma Administrative Code, Rules of the Board and Rules of the Oklahoma Bureau of Narcotics and Dangerous Drugs and The Uniform Controlled Dangerous Substance Act, 63 O.S.1991 § 2–101 *et seq.*)

*Count I:*

1. Respondents violated Board Rule OAC 535:10–3–1.1(3) by conducting himself in a manner which does not entitle him to the respect and confidence of the pharmacist community in which he practices. Respondent also violated Title 59 O.S. 353.26(A)(1)(e) by conducting himself in a manner likely to lower public esteem for the profession of pharmacy.

2. Respondent owns and operates and manages Mainstreet Pharmacy, an internet pharmacy which utilizes or has utilized a world wide web site at *nationpharmacy.com.* Respondent is responsible for all aspects of the professional operation of the pharmacy since it opened in Oklahoma in October, 2000, as he is the pharmacy manager who signed the original pharmacy application pursuant to OAC 535:15–3–2(b)(1).

3. Respondent has employed two physicians to write prescriptions, for large quantities of controlled drugs with usually two automatic refills on each. The controlled substances include but [are] not limited to hydrocodone, diazepam, butalbital, alprazolam, etc. for customers throughout the country. Respondents routine pharmacy business practice has been operated with knowledge that the employed physicians would not establish a predicate face-to-face doctor patient relationship prior to writing prescriptions for a 30–90 day supply, for controlled dangerous substances.

4. Respondents' pharmacy practice involving Mainstreet Pharmacy and *nationpharmacy.com* has been the subject of public criticism in Oklahoma in the media as a pharmacy which readily dispenses and ships controlled dangerous substances to individuals after a mere internet contact. Public complaints have been made that the Mainstreet Pharmacy is not reachable, that refills are not being provided. A person used a false identity to improperly obtain controlled dangerous substances, and that suicidal persons have obtained controlled dangerous substances (CDS).

5. Numerous facts relating to the operation of nationpharmacy.com and Mainstreet Pharmacy yield an appearance of improprie-

ty and result in an image that the pharmacy is attempting to avoid the jurisdiction of the Board of Pharmacy and the jurisdictions of other states for possible personal injury law suits which unsatisfied customers may wish to file. Respondents appear to be using Oklahoma as a haven for an extraterritorial questionable sales of CDS under the auspices of the Oklahoma pharmacy license. Respondent has placed a notice on the *nationpharmacy.com* web site that the pharmacy will not ship to Oklahoma (or Texas). The nationpharmacy.com web site does not list important information for the customers such as: the name of the associated pharmacy, Mainstreet Pharmacy; a phone number or mailing address of the pharmacy or the web site office; the parent corporate name of the Oklahoma corporation, Millenium Health Services, Inc.; the names of the associated physicians and pharmacists issuing and dispensing the prescriptions. Respondents have sold CDS prescriptions to customers in many states without obtaining the proper licensing required by the laws of those states to include California, Texas, Illinois, Virginia, Ohio and Florida.

*Count II:*

1. Respondents violated Board Rule OAC 535:10–3–1.1(5) by charging unfair and inequitable professional fees for dispensing prescriptions. The prices for the CDS drugs which Mainstreet Pharmacy sells through *nationpharmacy.com* are grossly disproportionate to its cost for the same CDS drugs.

A. For 100 hydrocodone 10/500, Respondents pay their supplier $18.00 (Eighteen Dollars). The customer is charged $240 (Two hundred and forty dollars) for 100 hydrocodone 10/500.

B. Respondents pays it (sic) supplier $102.51 (One hundred and two dollars & fifty-one cents) for 473 mls of Tussionex. The price list posted on *nationpharmacy.com* shows the customers' price for 473 mls of Tussionex is $285 (Two hundred & eighty five dollars).

*Count III:*

1. Respondent violated the Board Rule OAC 535:10–3–1.1(8) by utilizing a secret arrangement between himself as pharmacist owner and manager of Mainstreet Pharmacy and a physician, whereby he charged an initial fee of $240 (Two Hundred and Forty Dollars) to every initial internet pharmacy client, including re-initiations after a second refill. Forty-five dollars of the initial $240 fee was paid to the physician for every prescription written. This arrangement is not revealed to the customer.

*Count IV:*

1. Respondent violated OAC 535:10–3–1.2(2) by failing to establish and maintain any effective controls against the diversion of prescription drugs into other than legitimate medical, scientific or industrial channels as provided by federal or state laws.

2. Respondents have coordinated the writing and shipping of prescriptions for controlled dangerous drugs in alarming quantities. For the dates of October 25, 26, 27, 30, & 31 and November 1st and 2nd 2000, 1684 prescriptions were processed. Of that number 1651 were CDS prescriptions. Mainstreet Pharmacy coordinated the preparation and shipping of 151,000 units of controlled dangerous substances. Such volume would lead an average prudent and professional pharmacist to believe that some of these prescriptions may be for persons who are addicted to controlled substances, or for illegal resale on the street for profit. Respondent failed to take any action to guard against such possible diversion for illegitimate purposes.

*Count V:*

1. Respondent has violated Board Rule OAC 535:15–3–2(a) by failing to employ an adequate number of pharmacists to perform the practice of pharmacy as defined by the Oklahoma Pharmacy Act with reasonable safety.

2. Respondents have been filling CDS prescriptions in excessive quantities, up to 300–400 per day, and up to over 800 per day counting refills. While operating Main

Street Pharmacy in Oklahoma, Respondents have employed only one pharmacist to fill this quantity of prescriptions.

*Count VI:*

1. Respondents have violated Board Rule OAC 535:15-3-11( ) by permitting the employee pharmacist, Jerry Shadid, to dispense the refill prescriptions written by the physician Ricky Joe Nelson, after Dr. Nelson withdrew his authorization on December 14, 2000.

2. Respondents' employee pharmacist (Jerry Shadid) dispensed five prescriptions from January 2, 2001 through January 29, 2001 after Dr. Nelson had withdrawn his authorization of these prescriptions.

*Count VII:*

1. Respondents have violated Board Rule 535:10-3-1.1(1) by failing to comply with all federal and state laws in their pharmacy business. As Respondents facilitated a regular business practice of dispensing controlled dangerous substance prescriptions written by their "employ physicians" which were not issued for legitimate medical purposes in violation of Rule 475:30-1-3(A) of the Oklahoma State Bureau of Narcotic and Dangerous Drug Control.

*Count VIII:*

1. Respondent violated OAC 535:10-3-1.2(10) by failing to attempt to address the possible addiction or dependency of a patient to a drug dispensed by the pharmacist, if there is reason to believe that the patient may be dependent.

2. Respondents have or have caused to be dispensed large numbers of controlled dangerous drugs to customers through the mail system. Numerous facts and circumstances surrounding the operations of Mainstreet Pharmacy should have suggested the likelihood that there was addiction or dependency problems with their customers. Respondents' business maintained records of patient profiles. The patient profile records contained information which suggested that individuals were seeking prescriptions for CDS using multiple names and paying the excessive costs which Mainstreet Pharmacy charged.

*Count IX:*

1. Respondents have violated Board Rule 535:10-3-1.1(1) by failing to comply with all federal and state pharmacy laws. By dispensing controlled dangerous drugs (CDS) through Mainstreet Pharmacy method (sic) of operation, Respondents have violated Title 63 O.S. § 2-309(G). Respondents have regularly dispensed CDS through the mail when the ultimate user has not been personally known to the practitioner.

2. Respondents knew that the physician writing the prescriptions did not personally know the ultimate user, the customer. Respondents were aware of the method of operation of Mainstreet Pharmacy and that the physicians writing the prescriptions simply reviewed a questionnaire response submitted by the customers. Respondents were aware that the employed physicians were prescribing for these customers and also aware that the filled prescriptions were shipped from Mainstreet Pharmacy to the ultimate users.