Frank A. SCHULER, Jr., Appellant,

v.

UNITED STATES of America,
Department of State, et al.

No. 78–1797.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 28, 1979.

Decided Sept. 7, 1979.

Bernard Fensterwald, Jr., Washington, D. C., with whom Marc Feldman, Washington, D. C., was on brief, for appellant.

E. Anne McKinsey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry, Peter E. George, and Ann S. DuRoss, Asst. U. S. Attys., Washington, D. C., were on brief, for appellees.

Before WRIGHT, Chief Judge, and SWYGERT * and ROBB, Circuit Judges.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

Dissenting opinion filed by Circuit Judge ROBB.

J. SKELLY WRIGHT, Chief Judge:

Appellant, Frank A. Schuler, Jr., seeks both correction of his State Department personnel file and an award of monetary benefits lost due to the Government's allegedly improper treatment of him between 1944 and 1953. In 1976 he petitioned the newly formed Foreign Service Grievance Board for such relief, but the Board ruled that it lacked jurisdiction over his claim. Schuler appealed to the District Court in December 1977. That court concluded, however, that he had to seek correction of his records through the administrative procedures established by the Privacy Act,[1] and that his compensation claim was time barred under the six-year federal statute of limitations.[2] Although we agree with the District Court on the Privacy Act question, we believe that with respect to some aspects of Schuler's compensation request the Foreign Service Grievance Board incorrect-ly concluded that it lacked jurisdiction. In our view there is no statute of limitations obstacle to consideration of the compensation claim by the Foreign Service Grievance Board. Accordingly, we must reverse the District Court and remand for further proceedings.

## I

Because the District Court granted the Government's motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, the only factual allegations in the record before us appear in appellant's complaint, and we must presume that those uncontradicted allegations are true.[3] Consequently, our account of the events leading to this suit is drawn from the complaint.

Between 1930 and 1941 appellant was a foreign service officer with a specialty in Japanese language and affairs. He asserts that on September 13, 1941 a memorandum signed by Schuler and five associates was circulated at the State Department. The memorandum reportedly called for a re-evaluation of our policy toward Japan and warned of that nation's hostility toward us. The chief of the Division of Far Eastern Affairs strongly reprimanded the authors of the document and demanded an apology, which Schuler says he did not offer. On November 7, 1941 he was transferred to the Caribbean to establish a consulate on the island of Antigua.

Schuler remained on Antigua until 1943 despite his requests for an assignment that would draw on his language training and background in the national effort against the Japanese. After spending a year in our consulate in Windsor, Canada, Schuler was informed in 1944 that he would be sent to Noumea, New Caledonia, in the South Pacific, to work with the Office of War Infor-

---

* Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a) (1976).

1. 5 U.S.C. § 552a(a), (d) (1976).

2. 28 U.S.C. § 2401 (1976) (six-year statute of limitations for actions against the United States).

3. *Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 594–596 (1969).

mation (OWI). When he arrived in Noumea on June 27, 1944, however, he discovered that OWI had never maintained any operations in Noumea and that he was in fact expected to replace the resident American Consul there. Schuler decided to resign from the Foreign Service that day, and on June 28 the outgoing Consul sent a telegram to the Secretary of State with that message. In a telegram that reached Schuler on June 30 the chief of the Division of Foreign Service Personnel exhorted him to remain at his post, but when the Secretary of State did not reply to the resignation message by July 4, Schuler left Noumea.

Appellant states that upon his return to this country he again telegrammed the Secretary of State to inform him of his resignation. On July 20 he received a letter of reply informing him that he had been placed on "leave without pay status . . . in view of the fact that you left your post without orders and without awaiting a reply to a telegram dated June 28, 1944 . . . wherein you tendered your resignation."[4] Alarmed by what he considered a misrepresentation of his actions, Schuler exchanged several letters with the Department and requested a hearing on his status.

The hearing was held on August 30 before the Board of Foreign Service Personnel. Although a transcript of the hearing now appears in Schuler's personnel file, he disputes its accuracy and maintains that he was asked only one question at the proceeding. On September 27 the Board sent Schuler a letter stating that his resignation had been rejected and that he was "removed from office for insubordination."[5] The Board then denied his request for reconsideration.

Schuler held several temporary positions with foreign affairs agencies of the Government between 1945 and 1953, but never again attained permanent status despite several attempts. He asserts that in 1951 he was approved by the Office of the High Commissioner to Germany as Executive Officer in a consular office in Dusseldorf, a permanent post of foreign service officer rank, but that State Department officials in Washington rejected his nomination to that job. Finally, in February 1953 Schuler was linked publicly to one of the targets of Senator Joseph McCarthy's investigation of national security and two months later was discharged by the Government for the last time. Appellant says that since then he has been employed for only seven years, and that most job opportunities evaporated as soon as the prospective employer made a background check with the State Department.[6]

## II

Schuler retained counsel in 1963 to attempt to acquire information about his Government personnel file. That effort did not bear fruit, however, and the basis for this suit was not laid until appellant filed a similar request in 1976 under the Freedom of Information and Privacy Acts. Schuler claims he then discovered not only the allegedly incorrect transcript of the 1944 hearing on his dismissal, but also many other distorted or inaccurate reports in his personnel file. The complaint states:

These files contain accusations against plaintiff that he had serious emotional problems, that he falsified government employment applications, that he was involved in dubious financial dealings, that he associated with questionable individuals, that he was engaged in possible espionage, and that he was, at turns, dishonest, quarrelsome, meddlesome and arrogant. * * * [7]

These false allegations, Schuler insists, were at the root of his inability to return to the State Department on a permanent basis between 1945 and 1953 or to find any permanent employment after that.

In August 1976 appellant asked the Foreign Service Grievance Board, which had

4. Appendix (App.) 8.

5. *Id.* at 9.

6. *Id.* at 12.

7. *Id.*

been established by Congress in 1975,[8] to set aside his 1944 dismissal from the Foreign Service, remove false statements from his records, and award him back pay and pension rights for his lost employment. An administrative official ruled that Schuler's petition did not satisfy the jurisdictional requirements for grievances of former employees because it did not involve either a financial benefit or a "selecting-out" grievance. The full Board affirmed this ruling on two occasions. In response to White House intervention on Schuler's behalf, the State Department produced a subsequent report on the case which, according to appellant, simply compiles the inaccurate material already in his files. Schuler instituted this action in December 1977 to overturn the Board's decision.[9]

## III

As defined in 22 U.S.C. § 1037 (1976), the Foreign Service Grievance Board has jurisdiction over two types of grievances of *former* State Department employees: (1) "[A] complaint that an allowance or other financial benefit has been denied arbitrarily, capriciously, or contrary to applicable law or regulation";[10] and (2) complaints based on the "selecting-out" procedure for discharging from the Foreign Service those employees who have spent a specified period at a certain employment level without receiving a promotion.[11] Schuler's petition clearly does not fall within the latter category, but we believe that in some respects it is covered by the former, "financial benefit," provision.

### A

■ Our standard for review of the District Court's grant of the motion to dismiss was set out by the Supreme Court in *Conley v. Gibson* :[12]

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. \* \*

The complaint must be "liberally construed in favor of the plaintiff," who must be granted the benefit of all inferences that can be derived from the facts alleged.[13] Consequently, our decision must accord the complaint the spacious interpretation prescribed by the Federal Rules.

Schuler asked the Board to grant him back pay and pension status from his allegedly improper discharge in 1944. We are hard pressed to accept his claim for pay from 1944, since his only quarrel with the Government's actions at that point was that he was not permitted to resign, but was instead fired. It is difficult to see how he can be entitled to benefits for a period during which he did not wish to work for the State Department.

■ We think Schuler's situation is different, however, with respect to his claims that he was wrongly denied reinstatement to foreign service officer status several times between 1945 and 1953 and was improperly discharged from his temporary employment in 1953. To the extent that those actions by the State Department were based on false or malicious material in Schuler's personnel file, he might have a claim for lost "financial benefit[s]." The sparse record before us does not shed much light on this question. Appellant cites a 1953 memorandum by the chief of the State Department's security office that refers to "ample evidence in [Schuler's] file to preclude his appointment for security and suitability reasons."[14] Granting Schuler all inferences fairly to be drawn from this state-

---

8. Pub. L. No. 94–141, § 404(a), 89 Stat. 765 (1975) (codified at 22 U.S.C. §§ 1037–1037c (1976)).

9. Under 22 U.S.C. § 1037c all actions by the Board may. be appealed to the District Court.

10. 22 U.S.C. § 1037a(1)(C).

11. *Id.* § 1037a(1)(D).

12. 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

13. *See* note 3 *supra* (citing sources).

14. App. 13.

ment, it is certainly possible that the alleged inaccuracies in Schuler's personnel file did contribute to the Government's decision not to reinstate him in 1953 and at earlier times. Unless the Government can rebut those inferences before the District Court, Schuler's petition will have to be remanded to the Board for consideration of this claim.

■ There is no statute of limitations problem raised by our ruling on this point. Under the legislation establishing the Foreign Service Grievance Board, former employees complaining about incidents that occurred more than two years *before* the effective date of the Board's regulations must file their grievances no more than two years *after* that effective date.[15] Schuler's petition to the Board easily satisfied this deadline.[16] We must assume Congress realized that under this provision the Board might be presented with somewhat elderly grievances, like this one.[17] Thus we conclude that there was no basis for the District Court to dismiss appellant's claim that the Board had jurisdiction over his request for monetary benefits.[18]

## IV

■ We affirm the District Court's ruling on appellant's request that the Board be directed to correct his personnel files. The Privacy Act provides a specific cause of action for correction of records, while Congress did not grant the Foreign Service Grievance Board jurisdiction over such claims by *former* employees.[19] Appellant urges that, because the statute establishing the Board provides an exclusive remedy for grievances of former State Department employees, he could not pursue a Privacy Act action once he had elected to petition the Board.[20] We think appellant's contention neglects the statement in that statutory provision that the Board's exclusive jurisdiction is conditioned "upon the acceptance of jurisdiction by the Board." To state the tautology baldly, the Board can only have exclusive jurisdiction over matters within its jurisdiction. Since correction of records is not within its jurisdiction over former employees, by definition there can be no exclusive jurisdiction.

■ Equally, we cannot accept appellant's argument that he should be afforded an opportunity to demonstrate to the District Court that a Privacy Act proceeding would be futile. Appellant cites his unsuccessful attempt to gain correction of the records through White House intervention as proof that further requests for agency action would be doomed. But the White House episode involved an informal proceeding from which, as Schuler complains, he was completely excluded. Privacy Act procedures, on the other hand, would be quite different, with formal avenues for appeal within the agency.[21] Finally, the vague and conclusory allegations presented by appellant on this question provide no basis for us to short-circuit the important requirement that administrative remedies be exhausted before recourse to the courts is permitted.[22]

15. 22 U.S.C. § 1037a(3).

16. The Board's regulations were effective on April 1, 1976, and appellant filed his grievance on August 27 of that year.

17. Our ruling follows the decision of this court in *Oppenheim v. Campbell*, 187 U.S.App.D.C. 226, 571 F.2d 660 (1978), involving a claim by a retired civil servant for pension credits for time he was employed by United Nations agencies. The *Oppenheim* court found that the employee's action for direct relief was barred by the federal statute of limitations, but that his appeal under the Administrative Procedure Act of a recent Civil Service Commission decision on his claim was not time barred. Thus, so long as the administrative agency has jurisdiction over an old claim, the statute of limitations does not impede appeal of the agency action.

18. The Board's power to grant the compensation requested by appellant is established in 22 U.S.C. § 1037a(13)(B) & (D).

19. *See* text at notes 10–11 *supra*.

20. 22 U.S.C. § 1037b.

21. *See* 5 U.S.C. § 552a(f) (1976).

22. *See Wallace v. Lynn*, 165 U.S.App.D.C. 363, 367, 507 F.2d 1186, 1190 (1974).

Consequently, this case is remanded to the District Court for further proceedings on appellant's claim that the Foreign Service Grievance Board had jurisdiction over his post-1945 compensation claims.

*So ordered.*

ROBB, Circuit Judge, dissenting:

My colleagues strive bravely to resurrect a claim that expired almost thirty years ago but in my opinion their attempt is a failure. I would affirm the judgment of the District Court.

In his complaint Schuler (1) "appeals denial of jurisdiction by the Foreign Service Grievance Board" and (2) alleges breach of his employment contract "by the Department's dismissal of plaintiff in 1944 and subsequent conduct regarding him." He requests that the court grant the following relief:

(1) "De novo review of plaintiff's claim that his dismissal was illegal";

(2) "Declaration that plaintiff's dismissal from the Foreign Service in 1944 was illegal";

(3) Orders compelling the State Department to expunge and correct plaintiff's personnel records;

(4) Determination that plaintiff "is entitled to all monetary, pension, status, and other benefits that would have accrued to him in his career as a Foreign Service Officer since 1944"; and

(5) Judgment in the amount of $9,999.99 for breach of his employment contract.

The majority concedes that Schuler's separation in 1944 was not unlawful, because his only quarrel with the Government's actions at that time was that he was not permitted to resign but was fired. In any event his lawsuit in the District Court seeking reinstatement and damages for breach of contract on the basis of that 1944 action was barred by the statute of limitations. 28 U.S.C. § 2401. Those claims accrued in 1944 when he was separated. He argues in this court that in 1944 he was in a state of "blameless ignorance" of the facts, so that the statute was tolled, but that theory is untenable. *Fitzgerald v. Seamans*, 384 F.Supp. 688 (D.D.C.1974); *Fitzgerald v. Seamans*, 180 U.S.App.D.C. 75, 553 F.2d 220 (1977); *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338 (5th Cir. 1971); *Moviecolor Limited v. Eastman Kodak Co.*, 288 F.2d 80 (2d Cir. 1961); *Tinkoff v. United States*, 211 F.2d 890 (7th Cir. 1954); *Hebern v. United States*, 132 F.Supp. 451, 132 Ct.Cl. 344 (1955); *Morgan v. Koch*, 419 F.2d 993 (7th Cir. 1969).

The majority also holds, and I agree, that the Foreign Service Grievance Board had no jurisdiction to correct Schuler's personnel files.

Having reduced Schuler's case to this little measure the majority finally concludes "that in some respects it is covered by the . . . 'financial benefit,' provision" of 22 U.S.C. § 1037a (1976). That provision, 22 U.S.C. § 1037a(1)(C) provides:

[W]hen the grievant is a former officer or employee or a surviving spouse or dependent family member of a former officer or employee, "grievance" shall mean a complaint that an allowance or other financial benefit has been denied arbitrarily, capriciously, or contrary to applicable law or regulation;

I am unable to accept the majority's conclusion.

The provision of the Foreign Service Act creating the Foreign Service Grievance Board sharply distinguishes between grievants who are officers or employees and those who are former officers or employees. Thus under 22 U.S.C. § 1037a(1)(B) the Board is authorized in the case of an officer or employee to consider, among other things, "complaints against separation of an officer or employee allegedly contrary to law or regulation or predicated upon alleged inaccuracy (including inaccuracy resulting from omission of any relevant and material document) or falsely prejudicial character of any part of the grievant's official personnel record". The Board may also hear complaints concerning "alleged inaccuracy, error, or falsely prejudicial material in the grievant's official personnel file". In

the case of a former officer or employee however the Board may consider only "a complaint that an allowance or other financial benefit has been denied arbitrarily, capriciously, or contrary to applicable law or regulation". 22 U.S.C. § 1037a(1)(C). In short the Board has no jurisdiction to review the separation of a former employee or to order his reinstatement.

The phrase "financial benefits" in 22 U.S.C. § 1037a(1)(C) refers to pay, allowances, pension rights and the like accruing to a foreign service officer or employee as incidents of his employment. When Schuler was lawfully separated in 1944 his rights to those benefits as of 1944 were terminated. He could not reacquire such rights unless he again became a foreign service officer or employee. But the Foreign Service Board had no power to reinstate him. In these circumstances I cannot understand how the Board could possibly have jurisdiction to award him financial benefits relating to his employment. He had no employment and the Board was powerless to create employment for him.

Finally, it should be emphasized that in his petition to the Foreign Service Board Schuler "requested a prompt hearing at which additional documents and witnesses might be presented to show the illegality of his dismissal from the Foreign Service and to set aside the findings of the Board of Foreign Service Personnel in 1944." It is plain that Schuler's case before the Board consisted of an attack on his dismissal in 1944. The proceeding before the Board was thus limited to a consideration of that dismissal and of the Board's jurisdiction to review it. That was also the case in the District Court; the "financial benefit" theory now advanced by the majority was never presented either to the Board or to the District Court. It seems to me that the majority goes too far in its "spacious" treatment of the pleadings when it faults the Board and the District Court for failing to consider a claim that was never presented to them.

I respectfully dissent.