Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 18, 2004        Decided May 21, 2004

No. 03-7037

STAFFAN I. KAEMPE,
APPELLANT

v.

GEORGE C. MYERS, JR., INDIVIDUALLY, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02636)

————

*John R. Price* argued the cause and filed the briefs for appellant. *Wayne R. Hartke* entered an appearance.

*James P. Schaller* argued the cause for appellees. With him on the brief was *Benjamin R. Jacewicz.*

Before: EDWARDS and HENDERSON, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* EDWARDS.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

EDWARDS, *Circuit Judge*: This case arises out of attorney George C. Myers' representation of Staffan I. Kaempe in the processing of a patent application for a hydraulic pump. Kaempe sued Myers and Myers' current and former law firms, claiming that Myers converted Kaempe's interest in the patent by assigning that interest to a third party without Kaempe's consent. Kaempe further claimed that Myers committed legal malpractice by effecting the assignment in question, by failing to correct records at the U.S. Patent and Trademark Office suggesting that an assignment had been made and recorded, and by refusing to provide Kaempe with copies of certain documents related to the patent application.

The District Court dismissed the conversion count of the complaint for failure to state a claim, finding that an action for conversion of patent rights is not recognized under District of Columbia law. The court granted summary judgment to Myers on the malpractice claim on the grounds that Kaempe failed, *inter alia*, to provide expert testimony establishing the applicable standard of care, as required under D.C. law. Kaempe now appeals the District Court's judgments on both claims.

First, it is unclear whether D.C. law recognizes an action for conversion of patent rights, but it is unnecessary to reach this issue. Even if D.C. law did permit such an action, dismissal of the conversion claim was proper here, because the complaint and related documents make clear that Kaempe's patent rights were not, in fact, assigned or otherwise conveyed. Second, Kaempe's failure to provide expert testimony in support of his malpractice action is fatal to this claim. We therefore affirm the judgments of the District Court.

## I. BACKGROUND

### A. Legal Context

The U.S. Patent and Trademark Office ("PTO") is authorized by statute to grant and issue patents to inventors of "any new and useful process, machine, manufacture, or composition

of matter, or any new and useful improvement thereof." 35 U.S.C. §§ 2, 101 (2000). A patent application must be filed with the PTO in the name of the inventor or joint inventors of the subject invention. *See* 35 U.S.C. §§ 111(a)(1), 116 (2000). While a patent application is pending, an applicant may file a continuation-in-part ("CIP") application for an invention having some subject matter in common with the original application and some new subject matter. HERBERT F. SCHWARTZ, PATENT LAW AND PRACTICE 25-26 (3d ed. 2001). CIP applications are commonly made when, during the pendency of the initial "parent" application, the inventor conceives of improvements to the subject of that application. *See id.* at 25.

A patent gives its owner the right to exclude others from making, using, offering for sale, selling, or importing the patented invention. 35 U.S.C. §§ 154(a)(1), 271 (2000). The default rule is that the inventor or inventors own the patent rights to the subject matter of the patent. *See*, *e.g.*, *Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed. Cir. 2000). Joint owners – including those holding title by virtue of joint inventorship – are each vested with an undivided share of the patent rights. 5 ERNEST BAINBRIDGE LIPSCOMB III, LIPSCOMB'S WALKER ON PATENTS § 19.39, at 461-62 (3d ed. 1986). Subject to certain statutorily defined exceptions, a patent has the attributes of personal property. *See* 35 U.S.C. § 261 (2000). A patent owner or applicant may convey his or her rights in a patent or patent application, in whole or in part, by means of an assignment executed in writing. *See id.* Alternatively, an owner may exempt others from the patent's exclusionary power by granting a license, which is essentially a promise by the licensor not to sue the licensee for infringement. *See* U.S. PATENT AND TRADEMARK OFFICE, MANUAL OF PATENT EXAMINING PROCEDURE § 301 (8th ed. rev. 2003) ("MPEP").

If a patent assignment is not recorded with the PTO, it has no legal effect against any subsequent purchaser or mortgagee, provided that party gives valuable consideration to acquire an interest in the patent and has no notice of the prior assignment. *See* 35 U.S.C. § 261. Recordation protects an assignee against parties who later purport to acquire rights in the assigned interest. *See* 5 LIPSCOMB, *supra*, § 19.10, at 356.

PTO regulations provide for recordation of assignments, as well as documents other than assignments that relate to a patent or patent application but do not transfer or change title. *See* 37 C.F.R. § 3.11(a) (2003); MPEP § 313. However, recordation is a purely ministerial act and does not reflect any determination as to the validity of the document filed or its effect, if any, on the title to a patent or patent application. 37 C.F.R. § 3.54 (2003); MPEP § 317.03.

## B. Factual Background

In 1994, Staffan Kaempe invented a hydraulic pump (the "Cartridge Hydraulic Pump" or "pump") the components of which are held together by the fluid-output pressure generated by the pump itself, thus eliminating the need for external bolts or fasteners. Kaempe expected that this technology would permit significant reduction in the size and weight of hydraulic pumps and would ultimately replace conventional pumps altogether. Kaempe revealed his invention to Dennis Ewald, a longtime co-worker. In September 1997, Kaempe and Ewald retained attorney George C. Myers to prepare and process a U.S. patent application for the pump. Kaempe alleges that he permitted Ewald to be named as a co-inventor in the patent application in return for Ewald's agreement to pay the legal fees incurred in processing the application.

On October 23, 1997, Kaempe and Ewald executed a written agreement (the "October 1997 Agreement"), providing in relevant part:

> Ewald and Kaempe agree that to cause the further development, manufacture and distribution of the Cartridge Hydraulic Pump, they shall form a corporation (hereinafter "the Corporation") and execute a non-exclusive license to the Corporation of the patent for the Cartridge Hydraulic Pump for a term of the life of the patent.

Def. Mem. Supp. Summ. J., Ex. I (hereinafter "Def. Ex. I"), *reprinted in* App. 9, 10. In December of that same year, Kaempe and Ewald formed a corporation under Illinois law –

Cartridge Technology Hydraulics, L.L.C. ("CTH") – to manu-facture, sell, and distribute the Cartridge Hydraulic Pump.

Myers filed the patent application for the pump with the PTO on January 30, 1998. In September of 1998, Kaempe and Ewald requested that Myers prepare a CIP application for a new pump, incorporating some claims of the original pump and some new claims. At some point during the following year, however, a dispute arose between Kaempe and Ewald, and in mid-January of 1999, Kaempe's employment with CTH was terminated. On January 29, 1999, Ewald – allegedly without Kaempe's authorization – forwarded to Myers a copy of the October 1997 Agreement accompanied by a letter directing Myers to "file this assignment with the U.S. Patent Office and advise me if this is not sufficient." Compl. ¶ 14. The following week, Myers prepared forms for Ewald and Kaempe to assign the patent application to CTH, but Kaempe never received or executed any such document. Around this same time, Kaempe was removed as a manager of CTH. *Id.* ¶ 17.

In mid-February 1999, Kaempe retained attorney Bradford Lyerla, of the law firm of Ryndak & Lyerla, to represent him. In at least two letters and numerous phone calls and emails over the course of the following months, Lyerla requested that Myers provide Kaempe with copies of documents related to the patent application, including the draft CIP application for the new pump. Myers ultimately sent part of Kaempe's file, but he never sent the draft CIP application. As a result, Kaempe did not file the CIP application before the filing deadline, and the claims in the CIP application were not made part of the patent that ultimately issued. *See id.* ¶¶ 20-26.

Kaempe alleges that Myers incorrectly told him that he could not turn over the draft CIP application without Ewald's approval. *Id.* ¶ 25. Myers, in contrast, asserted that he refused to turn over the CIP application because Kaempe and Ewald had not paid for his services in preparing the applica-tion. Myers Dep. of June 18, 2000, at 109, App. 218. The record indicates that, on April 21, 1999, Myers sent Kaempe's new attorneys a bill for services and a letter requesting that

Kaempe pay half of the bill, apparently in response to Kaempe's request for the draft CIP application. *See* Letter from George Myers to James Ryndak, of Ryndak & Lyerla (April 21, 1999), App. 411. Just two days earlier, Kaempe petitioned the PTO to revoke Myers' power of attorney, asserting that a dispute had arisen between the inventors and that Myers had refused to provide Kaempe with information about the application without Ewald's consent. *See* Compl. Ex. L, App. 115.

Meanwhile, at some point in February 1999, Myers had filed for recordation with the PTO certain documents related to the patent application. On the required PTO cover sheet for the filing, Myers designated the "nature of conveyance" to be recorded as "other" (as opposed to "assignment," "security agreement," "merger," or "change of name"), and identified the documents to be recorded as "Agreement and Articles of Organization." Def. Ex. I, App. 138. In May of 1999, the PTO sent Myers a "Notice of Recordation of Assignment Document." Compl. Ex. N, App. 44. This notice indicated that the "agreement and articles of organization [dated 10/23/1997]" had been recorded on February 25, 1999, and identified Kaempe and Ewald as the "assignors" and CTH as the "assignee." *Id.* The notice further indicated that the documents were recorded at Reel 9784, Frame 0898. *Id.* The documents recorded at this location are the PTO cover sheet, CTH's Articles of Organization, and the October 1997 Agreement. Def. Ex. I, App. 9-14, 138-41. In a subsequent letter to Ewald and again in a bill for services, Myers referred to the documents filed with the PTO as an "assignment" of the patent application. *See* Letter from George Myers to Dennis Ewald (June 17, 1999), Compl. Ex. M, App. 117; Invoice for Legal Services Rendered Through February 28, 1999, Compl. Ex. F, App. 107.

In May of 2000, the PTO issued its decision on Kaempe's petition to revoke Myers' power of attorney. *See* Compl. Ex. P, App. 120. The PTO denied the petition in part, because it was not signed by Ewald or his representative. The PTO agreed, however, that "in order to assure that all interests are properly and effectively represented, all further corre-

spondence to the Patent and Trademark Office (PTO) must be signed by" both Lyerla and Myers, who remained Ewald's attorney of record. *Id.*, App. 121. The decision noted that "inspection of PTO assignment records reveals that both named inventors have assigned their entire right ti[t]le and interest herein to an assignee." *Id.* On November 28, 2000, the PTO issued a patent for the pump, listing Kaempe and Ewald as inventors.

## C. Proceedings Below

On December 20, 2001, Kaempe filed suit against Myers and Myers' former and current law firms (collectively "Myers") in the District Court. In Count I of the complaint, Kaempe claimed that Myers had unlawfully converted Kaempe's interest in the patent by causing it to be assigned – without Kaempe's authorization – to CTH. In Count II, Kaempe claimed that Myers had committed legal malpractice by causing the assignment in question, by failing to correct the PTO's records suggesting that Kaempe's interest had been assigned, and by refusing to provide Kaempe the draft CIP application upon request.

Myers moved for dismissal of Count I for failure to state a claim, arguing that under District of Columbia law – which the parties agreed governed – intangible property such as Kaempe's interest in the patent could not be the subject of an action for conversion. Myers argued in the alternative that no assignment had occurred. On March 22, 2002, the District Court dismissed Count I, finding that Kaempe's patent rights could not be the subject of an action for conversion under D.C. law. *Kaempe v. Myers*, Civ. Action No. 01-2636, slip op. at 3 (D.D.C. Mar. 22, 2002). On March 5, 2003, the District Court granted Myers' motion for summary judgment on Count II of the complaint on the grounds that Kaempe had not provided expert testimony on the applicable standard of care, had not demonstrated that Myers' actions were the proximate cause of any injury to Kaempe, and had not proven damages. *Kaempe v. Myers*, Civ. Action No. 01-2636, slip op. at 5-11 (D.D.C. Mar. 5, 2003). Kaempe appealed, challenging

both the dismissal of the conversion count and the award of summary judgment to Myers on the malpractice count.

## II. DISCUSSION

### A. Conversion Claim

Dismissal for failure to state a claim is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). We review *de novo* the District Court's dismissal of the conversion count, accepting the complaint's factual allegations as true and giving Kaempe the benefit of all inferences that can reasonably be drawn from such allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). However, we will not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Id.* (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1275 (D.C. Cir. 1994)). Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Having reviewed the relevant case law, we conclude that it remains unclear whether D.C. law would permit an action for conversion of patent rights. The D.C. courts have never ruled on whether, or under what circumstances, intangible property of this nature can be the subject of a suit for conversion. Some jurisdictions might permit such an action. *See*, *e.g.*, *Kremen v. Cohen*, 337 F.3d 1024, 1030-35 (9th Cir. 2003) (holding that California law permits an action for conversion of an internet domain name); *Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 23 F. Supp. 2d 974, 1006-07 (N.D. Iowa 1998) (collecting relevant cases and holding that Nebraska law might permit an action for conversion of an unpatented idea); *Curtis Mfg. Co., Inc. v. Plasti-Clip Corp.*, 888 F. Supp. 1212, 1233-34 (D.N.H. 1994) (holding that New Hampshire law permits an action for conversion of novel ideas embodied in a design); *see also* Val D. Ricks, *Comment,*

*The Conversion of Intangible Property: Bursting the Ancient Trover Bottle With New Wine*, 1991 B.Y.U. L. Rev. 1681, 1701-02 n.74 (collecting cases involving actions for conversion of intangible property). However, Maryland law, to which the D.C. courts might look for guidance, *see Conesco Indus., Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 315-16 (D.C. Cir. 1980), almost certainly would not: The Maryland Court of Appeals has held that an action for conversion of intangible property will lie only where such property is merged in a transferrable document and the document itself is converted. *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 965 (Md. 1999).

In any event, we need not reach this issue to dispose of the conversion claim. Even if D.C. law recognized an action for conversion of patent rights, Kaempe's complaint nevertheless fails to state a claim for conversion. It simply cannot be inferred from the complaint and related documents that Kaempe's patent rights were assigned or otherwise conveyed. Under D.C. law, an action for conversion is recognized only when a defendant has unlawfully exercised "ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Shea v. Fridley*, 123 A.2d 358, 361 (D.C. 1956). Where there has been no dispossession of property rights, there can be no action for conversion. Dismissal therefore was proper.

Kaempe's complaint asserts that "Myers performed legal services which caused [CTH] to acquire ownership in a valuable Patent to which it was not entitled." Compl. ¶ 37. This claim is premised entirely on the statements by the PTO and by Myers referring to the documents filed for recordation with the PTO as an "assignment." The complaint notes that Myers referred to the documents filed with the PTO as an "assignment" in a letter and a bill. *Id.* ¶¶ 16, 27. But the complaint relies primarily on the "Notice of Recordation of Assignment Document" issued by the PTO in May 1999, which identifies Kaempe and Ewald as the "assignors" and CTH as the "assignee" of the pump patent. *Id.* ¶ 38. The complaint also cites the patent examiner's decision disposing of Kaempe's petition to revoke Myers' power of attorney, in which the examiner stated that PTO records showed that

Kaempe and Ewald had assigned their interests in the patent to a third party. *Id.* ¶ 39. Based on these statements, the complaint asserts that "[i]t would appear from an examination of the records that the October 23, 1997 letter of intent [*i.e.*, the October 1997 Agreement] was filed with the United States Patent Office by Myers in a successful attempt to cause the Patent Office to grant an Assignment of the Patent to CTH." *Id.* at ¶ 40.

However, nothing in the complaint or the remainder of the record before us purports to show that any assignment of the patent was actually made. On the contrary, it is quite clear that the only documents filed with the PTO were the October 1997 Agreement and the CTH Articles of Organization, and that neither of these instruments assigns or otherwise conveys Kaempe's patent interests. The complaint in no way suggests that any "assignment" was filed with the PTO. Indeed, Kaempe's counsel conceded at oral argument that only the October 1997 Agreement and the CTH Articles of Organization were filed for recordation, *see* Oral Arg. Tr. at 3:00.0. The record fully confirms this.

The PTO's "Notice of Recordation of Assignment Document," appended to the complaint, identifies the recorded documents as "agreement and articles of organization" with a document date of October 23, 1997. Compl. Ex. N, App. 118. On the cover sheet for the filing, Myers identified the "nature of conveyance" as "other," not as an "assignment," and he identified the documents filed as "agreement and articles of incorporation" with a document date of October 23, 1997. *See* Def. Ex. I, App. 138. And the documents recorded at Reel 9784, Frame 0898 – identified in the complaint as the site at which the PTO recorded the purported "assignment" – include only the cover sheet, the October 1997 Agreement, and the CTH Articles of Organization. *See id.*, App. 9-14, 138-41.

The documents recorded by the PTO were not attached to Kaempe's complaint. However, the cited documents are public records subject to judicial notice on a motion to dismiss. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also* 37 C.F.R. § 1.12 (2003) (stating

that PTO assignment records are open to public inspection); *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 192 n.4 (8th Cir. 1982) (holding that the court may take judicial notice of PTO filings). It is also clear that these documents – which were appended to Myers' motion to dismiss and whose authenticity is not disputed – may be considered here because they are referred to in the complaint and are integral to Kaempe's conversion claim. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

The October 1997 Agreement and the CTH Articles of Organization clearly do not assign or otherwise convey Kaempe's rights in the patent. The October 1997 Agreement is, as Kaempe's complaint indicates, an "initial letter of understanding." Compl. ¶¶ 14, 40. At most, the agreement commits Kaempe and Ewald, at some future time, to form a corporation and grant to it a non-exclusive license in the patent. The Articles of Organization obviously do not affect Kaempe's patent interests. The statements by the PTO and Myers referring to the filing as an "assignment" – which appear to be the sole basis of the conversion claim – have no legal effect and are therefore irrelevant. Contrary to Kaempe's assertion, the PTO's misstatements do not in any way effect any conveyance of Kaempe's interests. The PTO has no authority to "grant" an assignment: As noted above, recordation is a ministerial act and reflects no determination as to the legal validity of the document filed or its effect, if any, on title to the patent or patent application. *See* 37 C.F.R. § 3.54; MPEP § 317.03. And Myers' misidentification of the filing in correspondence and bills, though odd, likewise has no effect on Kaempe's title. Calling the PTO filing an "assignment" – which clearly it was not – does not make it so.

In short, it cannot be inferred from the complaint or the related documents properly before us that Kaempe's interest

in the patent was assigned or that he was otherwise dispossessed of any portion of that interest. The complaint therefore failed to state a claim for conversion.

**B.  Attorney Malpractice Claim**

We review *de novo* the District Court's grant of summary judgment to Myers on the attorney malpractice claim, viewing the record in the light most favorable to Kaempe, the nonmoving party. *E.g.*, *Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 328 (D.C. Cir. 2004). Summary judgment is appropriate only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the party bearing the burden of proof at trial – in this case, Kaempe – must provide evidence showing that there is a triable issue as to each element essential to that party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Kaempe claims that Myers committed malpractice by (1) assigning his rights in the patent without Kaempe's consent; (2) failing to correct the PTO's misstatements that an assignment had been made and recorded; and (3) failing to provide Kaempe with a copy of the draft CIP application upon request. To establish a prima facie case of attorney malpractice under D.C. law, the plaintiff must establish the applicable standard of care, that the attorney violated the standard, and that the violation caused a legally cognizable injury. *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982). In order to meet the first of these requirements, the plaintiff "must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *Id.* Kaempe presented no expert testimony on the standard of care applicable to his claims, but argues that he was not required to do so because his claims fall within the "common knowledge" exception. We disagree.

Examples of attorney actions (or failures to act) that fall within the "common knowledge" exception include: allowing the statute of limitations to run on a client's claim, *see id.* at

13

342; permitting entry of default judgment against the client, *see id.*; failing to instruct the client to answer interrogatories, *see id.* at 342 n.6; failing to allege affirmative defenses, *see id.*; failing to file tax returns, *see id.*; failing to follow the client's explicit instructions, *see id.*; *Hamilton v. Needham*, 519 A.2d 172, 175 (D.C. 1986); and billing a client for time not spent providing services, *see Shapiro Lifschitz & Shram, P.C. v. R.E. Hazard, Jr.*, 97 F. Supp. 2d 8, 12 (D.D.C. 2000). The alleged errors cited by Kaempe are not similarly obvious, and knowledge of the standard of care applicable to Kaempe's claims clearly is not within the province of a lay juror.

As to the allegation that Myers committed legal malpractice by assigning Kaempe's interest in the patent without his consent, we have already concluded that the factual premise is unfounded. And we think it is well beyond the ken of the average juror to know whether an attorney in Myers' position had any duty to correct the PTO's records to the extent that they erroneously suggested that an assignment had been recorded, and, if so, what the nature of that duty would be. As to Myers' failure to provide copies of the draft CIP application on request, Myers provided essentially uncontested evidence that he withheld the application because he had not been paid for his services in preparing it, and that Kaempe had notice of this fact. This evidence included Myers' deposition testimony, as well as a letter and a bill for services apparently sent to Kaempe's new attorneys in response to Kaempe's request for the CIP application. Whether Myers had any duty to turn over the documents under these circumstances is not a matter of common knowledge.

In summary, none of Kaempe's claims falls within the common knowledge exception, and he therefore was required to provide expert testimony establishing the applicable standard of care. In neglecting to do so, he failed to establish a triable issue as to a key element of his malpractice claim, making summary judgment for Myers proper.

### III. CONCLUSION

For the reasons set forth above, we affirm on alternative grounds the District Court's dismissal of the conversion claim

and we affirm the award of summary judgment to Myers on the legal malpractice claim.