# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2023      Decided December 12, 2023

No. 22-5264

MICHAEL W. LANGEMAN,
APPELLANT

v.

MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02888)

———

*Lawrence Berger* argued the cause and filed the briefs for appellant.

*Lowell V. Sturgill Jr.*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Joshua M. Salzman*, Attorney.

Before: KATSAS, CHILDS and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: Michael W. Langeman (Langeman) appeals the district court's dismissal of his complaint for failure to state a claim. *Langeman v. Garland*, Civil Case No. 21-2888, 2022 WL 5240112 (D.D.C. Aug. 23, 2022). Langeman brought suit after he was summarily terminated from his position as a Special Agent with the Federal Bureau of Investigation (FBI) when a probe by the United States Department of Justice (DOJ) revealed Langeman's role in the mishandling of the investigation into sexual abuse allegations against USA Gymnastics Physician Lawrence Gerard Nassar. Langeman alleged violations of his constitutional rights as protected by the Fifth Amendment's Due Process Clause against Merrick B. Garland, in his official capacity as the Attorney General of the United States, the DOJ, the FBI, and two FBI officials (FBI Director Christopher A. Wray and FBI Deputy Director Paul Abbate) (collectively Appellees). Langeman alleged that his termination violated a constitutionally protected property interest in his continued employment and deprived him of a constitutionally protected liberty interest in his reputation, thereby damaging his future employment in law enforcement. For the reasons below, we affirm the district court's dismissal of Langeman's claims.

## I.

The background for this appeal is derived from Langeman's "complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."[1] *EEOC v. St. Francis Xavier*

---

[1] Consideration of facts subject to judicial notice does not convert a motion to dismiss into a motion for summary judgment. *See Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

*Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997) (citations omitted). Additionally, relevant "[p]ublic records are subject to judicial notice on a motion to dismiss when referred to in the complaint and integral to the plaintiff's claim." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018) (citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). A court may also consider documents attached to a motion to dismiss if they are "referred to in the complaint," integral to the claim(s), and if their authenticity is undisputed. *Kaempe*, 367 F.3d at 965 (citations omitted).

**A.**

As alleged, the FBI employed Langeman as a Special Agent for approximately 19 years, from 2002 until 2021. Langeman characterized himself as a career civil servant and alleged that he was a recipient of numerous positive performance appraisals and awards and did not have a disciplinary record. Nevertheless, on August 31, 2021, Langeman "was summarily dismissed from the employment rolls of the FBI effective on that date." Langeman's dismissal stemmed from an investigation by the DOJ's Office of Inspector General (OIG) into the FBI's alleged mishandling of charges of sexual abuse against Nassar, who molested young gymnasts placed in his care. The OIG issued a report (the OIG Report) that did not identify Langeman by name but found that he failed to follow basic investigative procedures. *See* OIG, *Investigation and Review of the Federal Bureau of Investigation's Handling of Allegations of Sexual Abuse by Former USA Gymnastics Physician Lawrence Gerard Nassar* 17–21 (July 2021), https://perma.cc/C5UZ-2GXW.

According to the OIG Report, USA Gymnastics officials met with three FBI agents, including Langeman, on July 28, 2015, at the FBI's Indianapolis Field Office, to report

allegations that Nassar had sexually abused multiple gymnasts. Following that meeting, the agents conducted only limited follow-up, mishandled evidence, and failed to open a formal investigation of the matter. The FBI's Lansing Resident Agency did not learn of the Nassar allegations until October 2016, after the Michigan State University Police Department opened a separate investigation.

Media outlets began reaching out to the FBI with inquiries regarding its handling of the case after news broke of Nassar's crimes. The OIG initiated an investigation, which involved over sixty witnesses and 1.5 million documents. Langeman declined voluntary interviews with the OIG, invoking his Fifth Amendment privilege against self-incrimination, but the OIG was ultimately able to compel interviews with Langeman on two occasions — first on September 3, 2020, and again on February 4, 2021.

The OIG published its report in July 2021, which heavily focused on Langeman because he was one of three officials in the Indianapolis Field Office who handled the Nassar allegations. The OIG concluded that Langeman mishandled evidence and failed to refer allegations through the proper channels, which delayed the investigation by over a year and led to the abuse of seventy or more athletes during the delay. The OIG also concluded that Langeman made false statements during both of his OIG-compelled interviews. Although the report did not disclose Langeman's identity, news sources and this litigation have since identified the "Indianapolis SSA" in the OIG Report as Michael Langeman. *See, e.g.*, CNN, *The FBI failed Olympic gymnasts. What does that mean for everyone else?* (Sept. 16, 2021), https://perma.cc/9AJ8-7PYW; *see also* Declaration of L. Stuart Platt, J.A. 65.

On August 31, 2021, Langeman was summarily dismissed from the FBI in a letter authored by Deputy Director Abbate. Abbate stated that he had "carefully reviewed the findings of the OIG" and concluded that Langeman had violated various FBI Offense Codes. J.A. 22. Abbate further expressed that due in part to Langeman's misconduct, "a perpetrator was able to victimize dozens of individuals," and that Langeman's actions "severely and negatively impacted the reputation of the FBI and diminished the trust and confidence of the American people." J.A. 22. Abbate concluded that he was "summarily dismissing" Langeman from the FBI "[i]n accordance with established policy, [and the] decision in this matter is final and not subject to further appeal or consideration." J.A. 22.

A few months after his termination, Langeman sued Appellees alleging that they deprived him of his Fifth Amendment right to both a property interest in continued employment and a liberty interest in his reputation, and that such stigma to his reputation hampered future employment. He also requested mandamus relief pursuant to 28 U.S.C. § 1361. In support of his property interest claim, Langeman alleged that he was entitled to adequate process pursuant to a March 5, 1997 memorandum on *Standards of Conduct Disciplinary Matters — Revision of the FBI's Disciplinary Process* issued by then FBI Director Louis J. Freeh (the Freeh Memo), which set forth the following procedural protections for FBI personnel:

> Any employee who is subject to a proposed sanction of suspension without pay for more than fourteen calendar days, demotion or dismissal, arising from the disciplinary process will be afforded the following procedural protections: 1) Thirty calendar days' advance written notice of the proposed adverse action; 2)

The opportunity to contact and use an attorney to assist in the disciplinary matter, . . . 3) An opportunity to review . . . the material which was relied on by the [Office of Professional Responsibility (OPR)] official in reaching a proposed determination that the employee has committed misconduct and of the appropriate sanction to be imposed; 4) An opportunity for the employee and his/her attorney to provide a written response to the proposed action . . . ; 5) Fifteen days' notice of a hearing in which the employee and his/her attorney may make an oral presentation to a senior OPR official, after submission of any written response but before any action is taken . . . ; 6) A written decision from a senior FBI official . . . ; and 7) An appeal . . . .

*Id.* at ¶ 22 (J.A. 29–31). Freeh further noted:

[t]hese protections will not apply to extraordinary cases which require immediate summary dismissal action. In such matters, I must preserve discretion to act without hesitation where the safety of the public, our fellow employees, national security interests or other compelling considerations may be at stake. However, to ensure that summary dismissal of an employee is exercised only under exigent and compelling circumstances, authority for that decision will not be delegated below the rank of Assistant Director.

*Id.* (J.A. 30–31). Langeman supported his liberty interest claim with allegations that Appellees' publication and dissemination

of untrue assertions of Langeman's dishonesty and unprofessional conduct to Congress, the news media, and the public led to the stigmatization of his reputation and the loss of future law enforcement employment opportunities.

**B.**

Appellees moved to dismiss Langeman's complaint for failure to state a claim.[2] Mot. To Dismiss at 2 (J.A. 42). They attached as supporting documentation "the August 31, 2021 dismissal letter." *See* Platt Declaration ¶ 2 (J.A. 65). They also incorporated by reference the OIG Report, a "publicly available" document. *See id.* at ¶ 3 (J.A. 65) (referencing https://oig.justice.gov/sites/default/files/reports/21-093.pdf (last visited Nov. 22, 2023)). We conclude that it is proper to consider both the termination letter and the OIG Report to resolve Appellees' motion to dismiss. *See Kaempe*, 367 F.3d at 965.

**C.**

With the above backdrop, the district court dismissed the action in its entirety. *Langeman*, 2022 WL 5240112, at \*4. The district court observed that Langeman failed to state a property interest claim because the Freeh Memo, that is "the document on which he relies to establish 'substantive limitations on official discretion[,]' in fact *preserves* the FBI Director's discretion to summarily terminate employees." *Id.* at \*3 (citing *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997)). The district court further concluded that "[e]ven if Langeman has sufficiently pleaded

---

[2] Appellees also moved to dismiss for lack of jurisdiction but withdrew that argument. *See Langeman*, 2022 WL 5240112, at \*2 n.3 (citations omitted).

the existence of a liberty interest infringed by the FBI, he has failed to allege facts on which the Court could find the FBI denied him due process." *Id.*

Langeman timely appealed.

**II.**

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The court reviews de novo the district court's dismissal of a complaint for failure to state a claim upon which relief can be granted. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Barr v. Clinton*, 370 F.3d 1196, 1201 (D.C. Cir. 2004)).

"To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Id.* (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). "Factual allegations, although assumed to be true, must still 'be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

9

**III.**

**A.**

Langeman contends that the Freeh Memo created a constitutionally "protectable property interest in his continued employment" which Appellees deprived him of without due process of law. Compl. ¶ 17 (J.A. 28).

For a property interest to be constitutionally protected by procedural due process, a person must "have a legitimate claim of entitlement to it," beyond "an abstract need or desire." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Such protectable property interests are derived from "existing rules or understandings that stem from an independent source such as state law." *Id.* To create this legitimate claim of entitlement, the independent source must place "substantive limitations on official discretion." *Wash. Legal Clinic*, 107 F.3d at 36 (citation and internal quotations omitted). In this regard, the independent source must "contain 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Tarpeh-Doe v. United States*, 904 F.2d 719, 723 (D.C. Cir. 1990) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

Serving as an "expansion of procedural protections," the Freeh Memo set forth new procedures available to FBI employees who were subject to "suspension without pay for more than fourteen calendar days, demotion or dismissal." J.A. 11. However, the Freeh Memo explicitly informed employees that the new protocols did not apply to summary dismissals, because Director Freeh expressly retained and preserved the "discretion to act without hesitation." J.A. 13. The Freeh Memo thus does not contain "explicitly mandatory language"

limiting official discretion and does not create a protectable property interest.

Langeman posits that the district court erred because the Freeh Memo contained substantive limits on official discretion to terminate employment by requiring a predicate finding of "exigent and compelling circumstances" before the occurrence of summary dismissal. Appellant Br. 16 (referencing J.A. 13). Langeman further contends that this limiting language was sufficient to create a legitimate claim of entitlement by limiting unfettered discretion. We think otherwise.

Langeman's interpretation is not supported by the plain language of the sentence containing the phrase "exigent and compelling circumstances." *See* J.A. 13 ("However, to ensure that summary dismissal of an employee is exercised only under exigent and compelling circumstances, authority for that decision will not be delegated below the rank of Assistant Director."). The reasonable interpretation of that sentence is that the authority to exercise summary dismissals is reserved for high-ranking officials in the FBI — i.e., Assistant Director or higher — without providing any substantive limit on official discretion. More importantly, the language does not contain any "specific derivatives" to the referenced decisionmakers that would indicate a "particular outcome must follow" from predicate findings. *Tarpeh-Doe*, 904 F.2d at 723; *see also Ky. Dep't of Corr.*, 490 U.S. at 464 ("The regulations at issue here, however, lack the requisite relevant mandatory language. They stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met.").

The Freeh Memo does not contain explicit mandatory language, but instead reserves "expansive authority and discretion" for FBI leadership to determine the circumstances where an FBI employee may be summarily dismissed. *See*

*Crooks v. Mabus*, 845 F.3d 412, 419 (D.C. Cir. 2016). It provides a list of circumstances in which summary dismissal is warranted, including where "compelling considerations *may* be at stake." J.A. 13 (emphasis added). That language undoubtedly "stop[s] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." *Ky. Dep't of Corr.*, 490 U.S. at 464. In the absence of substantive limitations on official discretion, the Freeh Memo does not create a legitimate property interest sufficient to state a claim under procedural due process. Therefore, the district court did not err in dismissing Langeman's property interest claim.

**B.**

Langeman contends he was deprived of a liberty interest because his "unblemished reputation has been stigmatized with false charges including dishonesty, his prospects for future employment with the Defendants have been foreclosed, and his prospects for other future public and private employment in law enforcement and related professions have been hampered." Compl. ¶ 42 (J.A. 38).

We have previously "recognized the possibility of an action for deprivation of a liberty interest without due process where an employee is terminated." *McCormick v. District of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014). We further recognized two theories of recovery: "reputation-plus" and "stigma or disability." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). Langeman fails to state a claim under either theory.

**1.**

A "reputation-plus" claim requires a plaintiff to identify an

act of defamation made in "conjunction" with an adverse employment action. *O'Donnell*, 148 F.3d at 1140. "[O]nly defamation that is '*accompanied* by a discharge from government employment . . .' is actionable." *Id.* (quoting *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983)). A reputation-plus claim "rests on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired." *Id.*

Langeman alleged that Appellees defamed him by accusing him of "dishonest and other unprofessional behavior" and by publishing those accusations "in their official capacities and through official channels, for review by the public at large." Compl. ¶ 41 (J.A. 37). Langeman further alleged that Appellees disseminated the untrue charges of dishonesty "to Congress, news media and the public." *Id.* at ¶ 43 (J.A. 38). He also indicated that this publication occurred both "[b]efore and after" his dismissal. *Id.* at ¶ 41 (J.A. 37).

Langeman's allegations are insufficient to state a reputation-plus claim because they do not establish that any allegedly defamatory conduct accompanied his discharge from government employment. Although Langeman alleges that Appellees "publish[ed] their allegations in their official capacities and through official channels," he does not assert facts demonstrating that the FBI actually revealed his identity in any defamatory public statement. Compl. ¶ 41 (J.A. 37). First, the OIG never referred to Langeman by name in the OIG Report or otherwise disclosed his identity. Second, the fact that the media reported on his termination does not establish that Appellees made a "public disclosure" of any defamatory statements. *See Crooks*, 845 F.3d at 420 (denying a reputation-plus claim where adverse publicity "appear[ed] to have emanated from . . . reports in a local newspaper that were not attributed to the [government]."). And third, FBI Director

Wray's testimony at a September 15, 2021 Senate Judiciary hearing — in which he publicly identified Langeman as one of the agents from the Indianapolis Field Office who mishandled the Nassar investigation depicted in the OIG Report — is privileged and is not actionable defamatory conduct. Director Wray's testimony about Langeman is privileged because it occurred during a legislative proceeding and its substance was sufficiently related to the purpose of the hearing. *See Webster v. Sun Co.*, 731 F.2d 1, 4 (D.C. Cir. 1984) (citing Restatement (Second) of Torts § 590A (Am. L. Inst. 1977)); *see also Dereliction of Duty: Examining the Inspector General's Report on the FBI's Handling of the Larry Nassar Investigation*: *Hearing Before the S. Comm. on the Judiciary*, 117th Cong. (2021). By reason of the legislative privilege, Director Wray's testimony does not support either a common law claim for defamation or a due process claim that requires "defamation in the course of the termination of employment." *O'Donnell*, 148 F.3d at 1140 (citation omitted); *see also id.* ("Requiring a demotion or firing to trigger a defamation claim also helps to limit the scope of permissible due process claims to a small set of truly serious claims, thus limiting the constitutionalization of tort law."). As a result, Langeman's reputation-plus claim fails because he cannot establish that he suffered defamation that accompanied his dismissal. Therefore, the district court did not err in dismissing this claim.

**2.**

Moving on to Langeman's second theory of recovery for deprivation of a protected liberty interest, a "stigma or disability" claim is predicated on a "combination of an adverse employment action" and "a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities." *O'Donnell*, 148 F.3d at 1140. The plaintiff must allege that this combination either "formally

or automatically exclude[d] [plaintiff] from work on some category of future [agency] contracts or from other government employment opportunities" or had the effect of broadly "precluding [plaintiff] from pursuing her chosen career." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994). We have further required that there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability. *See Orange v. District of Columbia*, 59 F.3d 1267, 1275 (D.C. Cir. 1995) (dismissing stigma claim where plaintiffs had yet to apply for jobs in their chosen careers); *O'Donnell*, 148 F.3d at 1141 (dismissing stigma claim where plaintiff was employed elsewhere but within his chosen career).

The allegations in Langeman's complaint fail to demonstrate the automatic exclusion or broad preclusion outlined in *Kartseva*. Langeman may very well be excluded from working with the FBI again, but it does not necessarily follow that he would be unable to find employment with any other federal agency indefinitely; nor is any such exclusion or explicit prohibition present in his dismissal letter. *See* J.A. 21–23. The complaint is similarly lacking in identifying in what ways Langeman is broadly precluded from pursuing his chosen career or foreclosed from public and private employment in law enforcement. Finally, Langeman does not allege that he attempted to obtain employment elsewhere and was rejected because of Appellees' alleged conduct. Therefore, Langeman fails to articulate allegations that sufficiently support a stigma claim.

Accordingly, the district court did not err in dismissing Langeman's stigma claim.

15

**C.**

Having concluded that Langeman failed to sufficiently plead deprivation of a property interest or liberty interest without due process, we need not and do not reach the issue of the adequacy of process which Langeman was afforded.

**D.**

Pursuant to 28 U.S.C. § 1361, Langeman requested mandamus relief "[i]f no other remedy is available through which [he] can be properly granted due process and through which the unlawful dismissal may be rescinded." Compl. ¶ 49 (J.A. 39).

"Mandamus is available only if: '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff.'" *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (citations omitted). We need not discuss all these elements because Langeman cannot show a clear right to relief due to his deficient due process allegations. Accordingly, the district court did not err in finding that mandamus relief was unavailable to Langeman. *See Langeman*, 2022 WL 5240112, at *4 n.6 (citing *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc)).

\*\*\*\*\*

Accordingly, for the foregoing reasons, we affirm the district court's dismissal of Michael W. Langeman's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

*So ordered.*